1821.

WATSON
v.
HUNTER

---

WATSON <i>against</i> HUNTER and M'CLAY.

This Court will not, unless under very special circumstances, grant an injunction, where *waste* has been committed by a tenant, to prevent timber which had been cut, from being removed.

In ordinary cases, the Court interfere only to prevent or stay *future* waste.

THE bill stated: that the plaintiff had a deed in fee for the premises mentioned, under a declaration of trust, in favour of *Samuel S. Haight*, to be executed on payment of 1,668 dollars and 36 cents; to secure which payment, the fee of the land was vested in the plaintiff. That the defendants were in possession, under a lease for four years; that the principal value of the land, as a security, consisted in the pine timber growing thereon. · That the defendants were committing great waste in the timber, and had already cut down large quantities of it, and were sawing it. at their mills, for sale. That the premises were a slender security for the debt due to the plaintiff, charged thereon. *Prayer* for an injunction, restraining the defendants from cutting down any more timber, or from *removing that already cut down, and*

*February 22.*

*not sawed, and that which was converted into boards or plank;* and for general relief.

*Ward,* for the motion.

THE CHANCELLOR. Injunctions to the extent prayed for may have been granted; but as I am not satisfied as to the propriety of such extensive and summary interference, I have been led to look into the course of the *English* authorities and practice on the point. After timber is cut, it ceases to be part of the realty, and is converted into personal property, and *trover* will lie for it. The question is, whether this Court ought to interfere, in the first instance, to control the disposition of that personal property; and that, too, without any special or extraordinary necessity stated for such interference.

The practice of granting injunctions, in cases of waste, is to prevent or stay the *future* commission of waste; and the remedy for waste already committed, is merely *incidental* to the jurisdiction in the other case, assumed to prevent multiplicity of suits, and to save the party the necessity of resorting to *trover* at law. Thus, in the case of *Jesus College* v. *Bloom*, (3 *Atk.* 262. *Ambl.* 54.) a bill was filed for an account and satisfaction for waste in cutting down trees, and no injunction was prayed for, and the tenant's estate had been assigned and determined. Lord *Hardwicke* held, that the bill was improper, and would not lie merely for satisfaction for timber cut down, and that an action of *trover* was the remedy. Where the bill was for an injunction to prevent waste, and for waste already committed, the Court, to prevent a double suit, would award an injunction to prevent future waste, and decree an account and satisfaction for what was past. The ground for coming into Chancery, was to stay waste, and not for satisfaction for the damages, as the commission of waste was a tort, and the remedy lay at law. But to prevent multiplicity of suits, the Court, on

1821.

WATSON
v.
HUNTER.

bills for injunctions to stay waste, and where waste had already been committed, would make a complete decree, and give the injured party a satisfaction for what had been done, and not put him to another action at law. The bill, in that case, was consequently dismissed. In the subsequent case of *Smith* v. *Cooke*, (3 *Atk.* 381.) Lord *Hardwicke* observed, that if the estate of the lessee was determined, and he had quit, a party could not come into equity, merely for an account of timber cut wrongfully; but where he continued in possession, and in a condition to commit more waste, the party might come into equity to stay future waste, and also be entitled to an account for the waste committed. So, again, in the case of *Lee* v. *Alston* (1 *Vesey, jun.* 78.) the same doctrine was declared by Lord *Thurlow*. A bill was filed by a remainder man in fee, against a tenant for life, for an account of timber cut, and for an injunction. The answer admitted the cutting of the timber wrongfully, as charged, and an account was decreed. It was observed, that the plaintiff, on the discovery by the answer, might have resorted to *trover* at law, but he was not obliged to do so, and might have an account under the admission in the answer. The Chancellor referred to the case of *Whitfield* v. *Bewit*, (2 *P. Wms.* 240.) which was a bill for an injunction to stay waste, and for an account of timber cut, and in which it seemed to be held, that the right to the timber cut might be pursued in Chancery, as well as by *trover* at law.

The same doctrine was declared by Lord *Hardwicke*, in *Garth* v. *Cotton*, (1 *Vesey* 528.) and that the decree for an account of the waste already committed, was " an incident" to the injunction to stay waste. It would seem, then, to be a stretch of jurisdiction, to apply the injunction to this incidental remedy, and to stay the use or disposition of the chattel. This would be enlarging the substituted remedy in this Court much beyond the remedy at law; and if it had been the established *English* practice, we should not

have been without the most clear and explicit cases in proof of it. The recovery in this Court is not the timber itself, *in specie*, but damages for the value of it; and why should the personal chattel be bound by injunction in this case, more than in any other case, where the remedy is for a tort sounding in damages? This Court will stay the commission of waste, or the transfer of negotiable paper, in certain cases, in order to prevent irreparable mischief; but the only mischief, that can arise in the present case, as to the timber already cut and drawn to the mills of the defendants, is the possible inability of the party to respond in damages. That is a danger equally applicable to all other ordinary demands, and it is not an impending and special mischief, which will justify this extraordinary preventive remedy by injunction. If the injunction could be ordinarily applied to waste, already committed, I apprehend we should very rarely hear of a special action on the case, in the nature of waste, in the Courts of common law.

In the case of the *Bishop of London* v. *Webb*, (1 *P. Wms.* 527.) an injunction was called for against a lessee for years, to prevent digging the ground for brick, as it was destroying the field and carrying away the soil. The Lord Chancellor said, " let the defendant carry off the brick he has dug, but be enjoined from further digging." In *Packington's Case*, (3 *Atk.* 213.) the bill stated, that the defendant had cut down a great number of trees, and had threatened to cut down and destroy them all, but the injunction only went to restrain him " from cutting down timber trees growing."

The only case I have met with, applicable to the very point, is a very loose note of an *anonymous* case of 1 *Vesey, jun.* 93. in which the solicitor general moved for an order to prevent the removal of timber wrongfully cut down. In what stage of the cause, or upon what state of pleadings and proofs, of this motion was made, does not appear. Lord *Thurlow* is said to have observed, " I have no doubt about the interference of this Court to prevent waste. The only

difficulty I have, is, as to what shall be done with the timber cut. *Trover* might be brought for it; but, as the *Register* says many orders of this kind have been made, take the order."

Such a case is not a sufficient authority to extend the injunction to the timber already cut. There must be a very special case made out to authorize me to go so far, and such cases may be supposed. A lease, for instance, may have been fraudulently procured by an insolvent person, for the very purpose of plundering the timber under the shelter of it. Perhaps, in that and like cases, where the mischief would be irreparable, it might be necessary to interfere in this extraordinary way, and prevent the removal of the timber. I do not mean to be understood to say, that the Court will never interfere, but that it ought not to be done in ordinary cases like the present. I shall accordingly confine the injunction to the timber standing or growing at the time of the service of the process.

Order accordingly.