Lawrence Lynch, Respondent, v. The Metropolitan Elevated Railway Company et al., Appellants.

Where a court of equity gains jurisdiction of a cause for one purpose it may retain it generally, and to do complete justice between the parties, ascertain and award damages as incidental to the main relief sought.

Where, therefore, an equity court assumes jurisdiction to restrain a continuous trespass, in order to prevent a multiplicity of suits, it may proceed to give full relief, both for the tortious act and the resulting damages.

The provision of the State Constitution declaring that: "The trial by jury in all cases in which it has heretofore been used, shall remain inviolate forever" (§ 2, art. 1), does not apply to the trial of issues of fact in an equity action; and this, although as incidental to the equitable relief sought, a money judgment is asked for and issues of fact are presented which might be the basis of an action at law.

In an action to restrain defendants from maintaining and operating their road in a street in front of plaintiff's premises in the city of New York, the complaint alleged the plaintiff's title and ownership, his rights in and to the street in front of his premises, the construction of defendants' road and the operation of trains over it, the failure of defendants to acquire or make compensation for the easements taken, the injuries sustained, that they will be constant and continuous, and that to prevent a multiplicity of suits, to protect against irreparable damages and to afford complete relief, the plaintiff was compelled to seek the equitable interference of the court. The prayer for judgment included a demand for the amount of loss and damage which might be ascertained to have been already sustained. When the case came on for trial defendants' counsel moved for a trial of the claim for past damages by jury; the motion was denied. Held, no error; that the demand for past damages did not have the effect to set it up as an independent cause of action, but was simply a demand that the court if it adjudged plaintiff entitled to the equitable relief prayed for, and having acquired entire jurisdiction of the action should, as an incident thereto, assess the damages which appear to have been sustained down to the trial; and that the right to a separate trial by jury of this issue was not within the purview of the constitutional guaranty.

Murray v. Hay (1 Barb. Ch. 59); Hudson v. Caryl (44 N. Y. 553), distinguished.

It seems that if defendants deemed themselves entitled to and desired a trial by jury of some issue of fact in the action, the proper course for them would have been to have applied upon notice for such a trial. (Code Civ. Pro. § 970.)

(Argued October 27, 1891; decided December 15, 1891.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of February, 1891, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Samuel Blythe Rogers* and *Julien T. Davies* for appellants. It was error to deny the defendants' demand for a jury trial of the cause of action for money damages for past trespasses. (Const. N. Y. art. 1, § 2.) Plaintiff's right to damages for past trespasses is a separate and distinct cause of action from his right to the aid of equity to prevent future threatened ones. (*Tallman* v. *M. E. R. Co.*, 121 N. Y. 119; *Bell* v. *Merrifield*, 109 id. 202, 209; *Secor* v. *Sturgis*, 16 id. 558.) That these two causes of action are not stated and numbered separately is immaterial. (*Goldberg* v. *Uttey*, 60 N. Y. 427; *Wiles* v. *Suydam*, 64 id. 173.) It is well settled that a plaintiff cannot, by joining a legal cause of action with an equitable one, deprive defendants of a jury trial of the former. (*Davis* v. *Morris*, 36 N. Y. 569; *Wheelock* v. *Lee*, 74 id. 495; *People* v. *A. & S. R. Co.*, 57 N. Y. 161, 174.) These past damages are not so " incidental " to the equitable relief as to take away the right of jury trial. (Code Civ. Pro. § 484; *Laub* v. *Buckmiller*, 17 N. Y. 620; *Rathbone* v. *Warren*, 10 Johns. 587; Story Eq. Juris. § 796; *Kempshall* v. *Stone*, 5 Johns. Ch. 193; *Barlow* v. *Scott*, 24 N. Y. 40, 45, 46; *Sternberger* v. *McGovern*, 56 id. 12, 21; *Carroll* v. *Diemel*, 95 id. 253; *Rathbone* v. *Warren*, 10 Johns. 587; *G. S. Bank* v. *Sharer*, 25 Hun, 409.) Past damages are not " incidental " to the injunction. (*Murray* v. *Hay*, 1 Barb. Ch. 59; *Laub* v. *Buckmiller*, 17 N. Y. 620, 626; *Lettin* v. *McCarty*, 41 id. 107, 111, 112; *Hudson* v. *Caryl*, 44 id. 553, 554, 555; *Coggswell* v. *N. Y. C. R. R. Co.*, 105 id. 319, 320; *Daw* v. *D. G. Co.*, 18 Hun, 274; *People* v. *M. T. Co.*, 11 Abb. [N. C.] 304.) The defendants did not waive a jury trial

of the legal cause of action by noticing the whole case for trial at Special Term. (*Brayton* v. *Sherman*, 119 N. Y. 623; *Halpin* v. *P. Ins. Co.*, 118 id. 165; *Wheelock* v. *Lee*, 74 id. 495; *Mackellar* v. *Rogers*, 109 id. 468; *Coleman* v. *Dixon*, 50 id. 572, 574; *Hudson* v. *Caryl*, 44 id. 553, 554; *Davis* v. *Morris*, 36 id. 569, 572.) Defendants did not waive a jury trial by not moving to have issues framed under section 970 of the Code. (Code Civ. Pro. § 1009; *Coleman* v. *Dixon*, 50 N. Y. 572, 574; *People* v. *A. & S. R. R. Co.*, 57 id. 161, 174; *McKeon* v. *See*, 51 id. 300, 305, 306; *Wheelock* v. *Lee*, 74 id. 495, 500; *Davis* v. *Morris*, 36 id. 569, 572; *Hudson* v. *Caryl*, 44 id. 553; *Williams* v. *People*, 24 id. 405.) It was not necessary for defendants to state any grounds for their demand for a jury trial. (*Wheelock* v. *Lee*, 74 N. Y. 495, 500; *Davis* v. *Morris*, 36 id. 569, 572, 573; *Hudson* v. *Caryl*, 44 id. 553, 555; *McKeon* v. *See*, 51 id. 300, 305.) The appropriateness of juries for determining questions of unliquidated damages, has always been recognized. (*Phillips* v. *Thompson*, 1 Johns. Ch. 131; *Halsted* v. *M. R. Co.*, 26 J. & S. 217.) The whole judgment should be reversed, and not merely the decree for past damages. (Code Civ. Pro. §§ 971, 972.) It was error to award damages for the portions of the property which were in the possession of tenants. (Code Civ. Pro. § 993.) The theory that equity took jurisdiction of this suit in order to prevent multiplicity of actions at law, of which that for past damages was one, is fallacious. The true ground was solely to prevent future trespasses. (High on Inj. [2d ed.] 450, § 700; *T. & B. R. R. Co.* v. *B., H. T. & W. R. Co.*, 86 N. Y. 107; *Galway* v. *M. E. R. Co.*, 40 N. Y. S. R. 145.) The supposed analogy of patent, trade-mark and copyright cases has no pertinency. (3 Pom. Eq. Juris. § 1352; 1 id. 227, 228; *Coleman* v. *Dixon*, 50 N. Y. 572; Code Civ. Pro. § 484; *Murray* v. *Hay*, 1 Barb. Ch. 59; *Laub* v. *Buckmiller*, 17 N. Y. 620; *Hudson* v. *Caryl*, 41 id. 107; *Cogswell* v. *N. Y. C. R. R. Co.*, 105 id. 319; *Bedloe* v. *F. D. D. Co.*, 112 id. 263, 269; *Todd* v. *Mason*, 109 id. 316, 322.)

*Charles Gibson Bennett* for respondents.   Within the principles of equity jurisprudence and pleading, as established at the adoption of the Constitution, the complaint contains a single independent cause of action, the claim for past damages being merely relief, which the Superior Court, exercising the powers of the late Court of Chancery, had jurisdiction to try and administer as incidental to the main relief. (*Russell* v. *Clark*, 7 Cranch, 69 ; *Armstrong* v. *Gilchrist*, 2 Johns. 424; *Miller* v. *McCann*, 7 Paige, 451 ; *A. M. Co.* v. *Spear*, 2 Sandf. 605; *Watson* v. *Hunter*, 5 Johns. Ch. 169 ; *Smith* v. *Cook*, 3 Atk. 379 ; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *Shephard* v. *M. R. Co.*, 117 id. 442; *Watson* v. *M. R. Co.*, 21 J. & S. 137; *Campbell* v. *Seaman*, 23 N. Y. 568; *Pollit* v. *Long*, 58 Barb. 20 ; Code Civ. Pro. § 969 ; *Hutchins* v. *Smith*, 63 Barb. 251; *Hess* v. *R. Co.*, 29 id. 291; *Ellsworth* v. *Putnam*, 16 id. 465.)   The appellants are not in a position to insist that it was error to deny their motion for a jury trial. (*Uline Case*, 101 N. Y. 98; *Pond Case*, 112 id. 186; Code Civ. Pro. § 969; *McKeon* v. *See*, 51 N. Y. 300 ; *Mackellar* v. *Rogers*, 109 id. 458.)

GRAY, J.   This action was brought to restrain the maintenance and operation of the defendants' roads in front of the plaintiff's premises, and the prayer for such a judgment included also a demand for the amount of loss and damage which might be ascertained to have been already sustained by the plaintiff. The complaint sets out the title and ownership of the plaintiff and his rights in and to the street in front of his premises; the construction of the elevated railroad and the operation of trains over it and the annoying results therefrom; the illegal and unauthorized nature of the trespass upon the plaintiff's premises and easements, and the failure of the defendants to acquire, or to make compensation for them; the injuries sustained, and that they will be constant and continuous, and, finally, that, to prevent a multiplicity of suits, to protect against irreparable damages and to afford complete relief, the plaintiff is compelled to seek the equitable interference of the

court. When the action came on for trial, the defendants' counsel moved for a trial of the plaintiff's claim for past damages by jury, and the exception to the denial of that motion raises the main question presented upon this appeal.

The clause of the Constitution, upon which the demand for a jury trial was based, reads: "The trial by jury, in all cases in which it has heretofore been used, shall remain inviolate forever." The argument for the appellants is, in substance, that there were two independent causes of action stated in the complaint; of which one was for past damages, which, prior to the Constitution of 1846, was cognizable solely in a court of law, and that under the Code it comes within the equity jurisdiction of the court only by reason of the permission to join in one complaint legal and equitable causes of action. By section 970 of the Code of Civil Procedure, which was a new enactment, it is provided that "where a party is entitled by the Constitution, or by express provision of law, to a trial by a jury of one or more issues of fact    *    *    *    he may apply upon notice to the court for an order directing all the questions arising upon that issue to be distinctly and plainly stated for trial accordingly," whereupon the court must so order, etc. If the defendants believed that they had a constitutional right to a jury trial of some issue of fact in this action, it would have been the natural and orderly way for them to make an application to the court under this section. The complaint appears to be but one consecutive narrative of the grounds upon which the equitable interference of the court is alleged to be necessary. The pretense that there is a separate cause of action rests only upon the demand of the complainant that, if he is entitled to the equitable relief of an injunction, the court shall adjudge to him such an amount for the loss sustained by the defendants' acts as shall be ascertained.

Undoubtedly, the claim for past damages, sustained by plaintiff in his property rights from the defendants' acts, could have been made the subject of an action at law; but that was not the cause of action which the plaintiff elected to assert in his complaint and to bring to trial. What he attempted by insti-

tuting his action was to restrain the continuance of acts, which were constantly injuring and would, to all appearances, constantly in the future continue to injure him, in ways and in a manner which he described in his complaint. That was a form of relief demandable and cognizable only on the equity side of the court. Hence, as upon the face of the complaint, the plaintiff alleged a cause of action for equitable relief, if the defendants conceived that they were entitled to a trial by jury of any issue of fact involved in the statements of the complaint, they might have moved the court under section 970, and then the question could have been opportunely and properly met. Appellants cite upon this point the decision · in *Colman* v. *Dixon* (50 N. Y. 572), but that was made in 1872, and section 970 was a new provision and was enacted in 1877.

But, whatever the effect of the omission to take this course of procedure, we need not determine it now ; inasmuch as the conclusion we have reached holds the right to a separate trial by jury, as to the amount of past damages, in such an action not to be within the purview of the constitutional guaranty. The action was one purely for a court of equity ; for the main relief sought was an injunction against the defendants, restraining them from maintaining and operating their elevated railroad. To the assertion of this ground for the equitable interference of the court, the facts in the complaint were marshalled, and to the necessity for granting that species of relief every allegation of the complaint was framed and calculated to lead. There was but one cause of action stated in this complaint, and that was the claim for relief against the continued trespass upon the complainant's properties. The demand for past damages, included in the prayer for judgment, does not have the effect to set up an independent cause of action. It is nothing more than a demand that the court, having adjudged the plaintiff entitled to the equitable relief prayed for, and having acquired entire jurisdiction of the action, will assess the damages which appear to have been sustained down to the trial.

It has always been a well-settled and familiar rule that when a court of equity gains jurisdiction of a cause before it for one

purpose, it may retain it generally. To do complete justice between the parties a court of equity will further retain the cause, for the purpose of ascertaining and awarding the apparent damages, as something which is incidental to the main relief sought. While this is done on the ground that the remedy for the damage done is deemed to be incidental to the relief of injunction, the principle is in perfect harmony with the theory of the jurisdiction of a court of equity. Its power is invoked, and it interferes to restrain a trespass, which is continuous in its nature, in order to prevent a multiplicity of suits, and, taking jurisdiction of the cause for such a purpose, it may retain it to the end and close up all matters for legal dispute between the parties by assessing the loss sustained from the acts which it has restrained.

The power and practice of courts of equity were, as it was forcibly remarked by Judge EARL in the case of *Madison Avenue Baptist Church* v. *Oliver Street Baptist Church* (73 N. Y. 82, 95): "When they have once obtained jurisdiction of a case to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties."

The fact that a money judgment is ordered against the defendant for the plaintiff's loss affords no peculiar ground for attacking equity's jurisdiction. That is frequently the case in actions of an unquestioned equitable nature. Quite recently Judge FINCH, in *Van Rensselaer* v. *Van Rensselaer* (113 N. Y. 207), observed with respect to an objection to the jurisdiction of a court of equity that the final relief would be a personal judgment, that it would not in that manner lose its jurisdiction of an action of an equitable character. The jurisdiction "once acquired," he said, "it retains to the end, even though it may turn out that adequate relief is reached by a merely personal judgment. That is not an uncommon occurrence."

Instances are frequent in which a court of equity decrees the payment of money as an incident of the grant of equitable relief, and that feature does not suffice to qualify the jurisdiction. But I think we should consider the question to have

been settled, upon the authority of several decisions of this court.   In the case of *Williams* v. *New York Central Railroad Company* (16 N. Y. 97), the opinion was delivered by Judge SAMUEL SELDEN.   That was a suit in equity, brought to restrain the defendants from using the street with their railway and to recover damages for past use.   The conclusion arrived at, as expressed in the opinion, was that "it follows that the defendants in constructing their road   *   *   *   were guilty of an unwarrantable intrusion and trespass upon the plaintiff's property, and that he is entitled to relief.   Although he had a remedy at law for the trespass, yet, as the trespass was of a continuous nature, he had a right to come into a court of equity and to invoke its restraining power, to prevent a multiplicity of suits, and can, of course, recover his damages as incidental to this equitable relief.   There may be doubt as to his right to recover in this suit the damages upon the lots which have been sold; because as to those lots there was no occasion to ask any equitable relief, and to permit the damages to be assessed in this suit, in effect, deprives the defendants of the right to have them assessed by a jury.   But, as this question has not been raised, it is unnecessary to consider it."

There are two things to be noted in that opinion.   In the first place, the damages already sustained were deemed within the power of a court of equity to award, as an incident of its jurisdiction over the action.   This idea is, in fact, emphasized by the suggestion as to the lots which had been sold; because it is clear that the court regarded its right to award the damages as a matter connected with, or dependent upon, the ground for granting any equitable relief; that is to say, as to the property to be protected by the decree of the court against the defendants' acts, the damages caused to it could be assessed by the court; but as to that portion withdrawn by the sale it might be doubtful, because not the subject of, or entitled to, the equitable relief.   It is very obvious that the court had in mind the question as to the right of trial by jury.   In the second place, it may be noted that the opinion speaks of the assessment of the damages.   This definition of an assessment of

the damages seems to me to put the action of the court in line with just what courts of equity have always done in cases over which they have gained jurisdiction; that is to say, they proceed to inquire directly, or by reference, or otherwise, as to the damages sustained and assess them accordingly. When, later, the same case, entitled as *Henderson et al.*, after a new trial, came up again (78 N. Y. 423), the opinion of the court was delivered by Judge DANFORTH, who again upheld the plaintiff's right to invoke the equitable power of the court, and held that he could, " of course, recover his damages as incidental to this equitable relief;" and he stated it to be "an elementary principle" that " when a court assumes jurisdiction in order to prevent a multiplicity of suits it will proceed to give full relief both for the tortious act and the resulting damages." The opinion was carefully written and based upon the authority of many cases.

Recently, again, in the case of *Shepard* v. *Man. R. Co.* (117 N. Y. 442), it was said of these actions that they were necessarily "on the equity side of the court, as the main relief sought was the injunction against the defendants," and that in them the complainants could " recover the damages they have sustained as incidental to the granting of the equitable relief." This view, as stated in that opinion, was expressly based upon the *Williams* and *Henderson* cases and upon the supposed equitable principles governing such actions.

The *Shepard* case, somewhat conspicuously, illustrates the powers a court of equity may arrogate to itself with the object of completely determining and quieting the questions before it, when it has once acquired jurisdiction of the action. It follows, in that respect, a rule long established by authority. It is true that in these cases the right to demand a jury trial as to past damages was not precisely, or in terms, stated as the proposition advanced; but that, as it seems to me, would be a very narrow evasion of the effect of the opinions delivered. They did consider the nature of such actions and deliberately declared the power of the court in equity, as an incident of the main relief of injunction, to assess the damages sustained.

In *Carpenter* v. *Osborn* (102 N. Y. 552), the court, in an action to set aside certain conveyances as fraudulent, granted the equitable relief prayed for, and, in addition, decreed the judgment a lien upon the land for some unpaid installments of interest, to the payment of which the defendant had obligated himself in a certain agreement. Chief Judge RUGER delivered the opinion of this court in affirmance of the judgment and said: "This principle has been applied in many cases, in awarding judgment for pecuniary damages, even when the party had an adequate remedy at law, if the damages were connected with a transaction over which the courts had jurisdiction for any purpose; although for the purpose of collecting damages merely they would not have had jurisdiction." In support of the principle declared by him, the learned judge cited Pomeroy's Equity Jurisprudence (§ 181), and various cases.

I think some confusion of thought concerning the constitutional guaranty of a trial by jury may arise in a misapprehension as to to its proper application. That provision relates to the trial of issues of fact in civil and criminal proceedings in the courts; as it was held by the chancellor in the case of *Beekman* v. *Saratoga & S. Railroad Co.* (3 Paige, 45). Where the trial of a civil proceeding presents for determination a question of fact, the right of trial by jury is proper and can be invoked. But an action brought to restrain the commission of trespasses, which are continuous in their nature, is necessarily in equity, and the court interferes, to prevent multiplicity of suits, and grants equitable relief by way of an injunction  The question presented for determination in such an action is one of law, whether, upon the facts to be established upon the trial, the plaintiff is entitled to such relief. Upon the proofs, showing the nature of the trespasses, and the consequent injury to the complainant's property, the court decides the question of plaintiff's right to an injunction. It does not seem to me that it can be said that any issue of fact as to damage remains. That was necessarily decided in the action, and all that remains is to fix its amount; and I do not think the constitutional provision was aimed at such a proceeding. As

defined by the chancellor in the case above referred to, it seems difficult to rationally give it an application to what is simply an assessment of the damages.

I may extract, and may appositely quote here, a remark of Judge ANDREWS in his opinion in *Cogswell* v. *N. Y., N. H. & H. Railroad Company* (105 N. Y. 319) : " We think," he says, " it is a reasonable rule, and one in consonance with the authorities, that where a plaintiff brings an action for both legal and equitable relief, in respect to the same cause of action, the case presented is not one of right triable by jury under the Constitution." The case was one wherein the plaintiff's complaint demanded judgment for damages and an abatement of a nuisance, and also for an injunction against its continuance. The learned judge's opinion is upon the question of whether such an action was one for a nuisance, under section 968 of the Code, which must be tried by jury, unless waived or referred, and he held that it differed from *Hudson* v. *Caryl* (44 N. Y. 553), which was a common-law action, in that equitable relief by way of injunction was asked, and not simply the relief obtainable by writ of nuisance for damages and an abatement. His remark upon the right to a jury trial in equitable actions is not out of place, however, here.

To carry this discussion backwards, and to a time anterior to decisions of this court, we find warrant in the opinions then held by our own and the English chancery courts for holding that a trial by jury was not usual in cases where equity had acquired jurisdiction, and that the court would administer all the relief which the facts warranted, including the assessment and awarding of compensation for injury sustained. In *Watson* v. *Hunter* (5 Johns. Ch. 169), the bill was filed to enjoin the cutting of timber and to restrain the removal of that which had already been cut. Chancellor KENT confined the relief of injunction to the timber standing, and refused it as to the removal of the cut timber, on the ground that it would be an application to an " incidental remedy." He said that " the practice of granting injunctions in cases of waste is to prevent or stay the *future* commission of waste ; and the

remedy for waste already committed is merely *incidental* to
the jurisdiction in the other case, assumed to prevent multi-
plicity of suits and to save the party the necessity of resorting
to *trover* at law."

The chancellor's exposition of the principle upon which
equity acts in cases of waste, obviously, is as applicable to cases
of trespass. If the action at law in trover was deemed unneces-
sary for the personal property already converted in that case,
it seems unnecessary in such an action as this, in order to
recover the loss sustained from the trespass. The chancellor
in the *Watson* case relied upon the practice followed by the
English chancellors. Lord HARDWICKE, in *Garth* v. *Cotton* (1
Vesey, Sr., 528), had held that the decree for the waste already
committed was an incident to the injunction to stay waste.
Before that, in *Jesus College* v. *Bloom* (3 Atk. 262), where the
bill was filed for an account and satisfaction for waste in cut-
ting trees, and no injunction was prayed for, Lord HARDWICKE
said that the bill was improper and that an action of trover
was the remedy. He asserted the rule, however, that where
the bill was for an injunction to prevent waste, and for waste
already committed, the court, to prevent a double suit, would
award an injunction to prevent future waste and decree an
account and satisfaction for what was past. He held that to
prevent multiplicity of suits the court will, on bills for injunc-
tion, make a complete decree and give the injured party a
satisfaction for what had been done, and not oblige him to
bring another action at law. In the subsequent case of *Smith*
v. *Cooke* (3 Atk. 381), the same lord chancellor declared the
same doctrine; as did also Lord THURLOW in *Lee* v. *Alston* (1
Ves. 78). I quote a remark of Lord NOTTINGHAM, in *Par-
ker* v. *Doe* (2 Ch. Cases, 201), that when a Court of Chancery
has once gained possession of the cause, if it can determine the
whole matter, it will not be the handmaid of other courts,
" nor beget a suit to be ended elsewhere."

In our former Court of Errors, Chancellor (then Judge)
KENT held, in *Armstrong* v. *Gilchrist* (2 Johns. Cases, 424,
431, decided in 1800), that "the Court of Chancery, having

acquired cognizance of a suit for the purpose of discovery or injunction, will, in most cases of account, whenever it is in full possession of the merits and has sufficient materials before it, retain the suit in order to do complete justice between the parties and to prevent useless litigation and expense." That case was upon a bill for specific relief and to restrain an action at law brought to recover the value of certain bank stock, and it set up certain equitable considerations as against the justice of a recovery in the other action. The chancellor below decided against the whole relief sought by the bill, and decreed in favor of the defendants that the complainants should pay them the value of the stock and ordered a reference to state the account. This procedure the Court of Errors upheld as being right and the duty of the chancellor to follow.

I do not consider the cases cited by the appellants to be at all controlling upon the question. In *Murray* v. *Hay* (1 Barb. Ch. 59), the bill was filed by two persons, who were owners of different dwelling-houses, in severalty, having no joint interest in either of them, to restrain a nuisance which was a common, but not a joint, injury to both complainants. The objection to the prayer for an account and compensation for their respective damages was upon the ground of multifariousness, and so considered. Another case of *Hudson* v. *Caryl*, (44 N. Y. 553), was an action to recover damages for the overflowing of plaintiff's lands and to compel the removal of the dam ; and the decision turned upon the ancient right to a jury trial, in such an action of nuisance, which the Code had not affected. It was not an action in equity to restrain a nuisance, which, according to Judge ANDREWS' opinion in the *Cogswell* case (*supra*), would not be an action for a nuisance directed by the Code to be tried by jury.

But the judge who delivered the opinion of the majority of the Commission of Appeals, in *Hudson* v. *Caryl*, spoke *obiter* in his remarks upon the general right of trial by jury, as his opinion indicates, for he says (p. 555): " But whatever may be said or decided in regard to the trial of other actions, in which two causes of action, one exclusively of legal and another

exclusively of equitable cognizance, arising out of the same transaction, are united, this action should, for an independent reason, have been tried by jury, and that is, that the action, when brought for the double object of removing the nuisance and recovering the damages occasioned by it, was always tried by jury;" and he proceeds to refer to Blackstone and to the old Revised Statutes. As, therefore, "a case is presented in which a trial by jury has been heretofore used," the commissioner concluded it was error to refuse it.

It does not seem to me necessary to pursue further the consideration of authorities. The respondent's counsel has cited others, in this and the lower courts. In a note to *Armstrong* v. *Gilchrist* (*supra*) will be found reference to other early cases in this state, and in the United States Supreme Court, in support of the "settled rule, that when the Court of Chancery has gained jurisdiction of a cause for one purpose, it may retain it generally for relief." Underlying the system upon which courts of equity have exercised their power, as I understand it, is the principle that when they have gained jurisdiction of a cause by reason of the infirmity of the courts of law to entertain it, or to give full relief, they will retain their control of the cause generally, and settle up the whole matter between the parties.

I have discussed the question here at considerable length, in order that a rule, long settled by careful judicial utterances, and, in itself, reasonable and commendable as promoting the public convenience in the disposition of litigated causes, might not, at this day, be shaken by doubts. The conclusion which, I think, we must reach is that, in this complaint, the cause of action is single and constitutes a claim for equitable relief, and there is not mixed up with it a cause of action for legal relief.

The facts alleged as a basis for an appeal to the court to exert its equitable power may well have constituted a claim for legal relief, and might have been set up in an action at law; but that consideration cannot affect nor change the equitable nature of the action itself.

It was not error, therefore, to deny the motion for a trial by jury as to past damages, and the court could competently proceed with the trial of the cause in equity.

The only other point, presented to us upon this appeal, is that it was error to award damages for portions of the property which were in the possession of tenants. As to this question the case is controlled by the decision of the *Kernochan* case, at this term.

The judgment should be affirmed, with costs.

All concur, except EARL and PECKHAM, JJ., dissenting.

Judgment affirmed.