(20 App. Div. 596.)

EMIGRANT MISSION COMMITTEE et al. v. BROOKLYN EL. R. CO.

(Supreme Court, Appellate Division, Second Department.   October 5, 1897.)

1. EMINENT DOMAIN—ELEVATED ROADS—CONSEQUENTIAL DAMAGES.
Where an elevated railroad is constructed and operated in a city street pursuant to legislative and municipal authority, the railroad company, to the extent of the grant of authority, is not liable for merely consequential damages to the property of abutting owners, unless occasioned by its misconduct or negligence.

2. SAME—INTERFERENCE WITH LIGHT AND AIR.
Interference by an elevated railroad with the beneficial enjoyment of light, air, and access of an abutting owner on a street, by the occupants in the use of it, is an invasion of his property, although he have no property right in the street other than in such easement; and resulting damages which go to depreciate the value of the property give support to injunctive relief.

3. SAME—INJUNCTIVE RELIEF.
It is only the invasion by an elevated railroad of an abutting owner's easements of light, air, and access, and damages resulting therefrom, which permit injunctive relief.   When the equitable jurisdiction is supported, the court, as incidental to the main relief, may also assess and award past damages.

4. SAME—USE AS DUMPING GROUND.
An elevated railroad company, whose structure stood in front of plaintiff's premises, also, and without specific legislative authority, occupied a space on each side thereof for its yards, for dumping ashes, etc.   The ashes flew into the house when the windows were opened, rendering the occupation of the premises uncomfortable.   Held, that the statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury.

5. SAME—DAMAGES.
Held, further, that the facts in respect to dumping ashes in the yards were such as to authorize the court to take them into consideration as an element of damage; but that this could be treated as past damage only, and could not properly be included in the fee damage.

6. SAME—EVIDENCE.
It did not appear from the findings or decision of the court whether any damages were allowed for injury due to ashes blown from the yards, nor, if allowed, whether they were not included in the past or rental damages only.   Upon the trial, defendant's objection as to this testimony was general, and raised no question founded on the distinction between fee and past damages.   Held, that the reception of the evidence, and the court's refusal to strike it out or disregard it, were not error.

Appeal from special term, Kings county.

Action by the Emigrant Mission Committee and others against the Brooklyn Elevated Railroad Company.   From a judgment for plaintiffs, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and BRADLEY, JJ.

R. Perce Chittenden, for appellant.

Stephen M. Hoye, for respondent.

BRADLEY, J.   The purpose of the action was to restrain the defendant from operating its elevated railroad in Broadway in front of the plaintiff's premises, and to recover damages.   The plaintiff's premises are situated on the northerly side of that street, and have a

frontage on the street of 50 feet and a depth of 264 feet. The property was purchased in 1863 by one Birkner, who in 1869 erected a two-story, mansard-roof house on it, 40x40 feet, with an extension added, and the lot was otherwise improved. The defendant's elevated railroad was constructed in Broadway, and the operation of it commenced in front of the property in June, 1885. In that month Birkner conveyed the property to Jacob Morch, who took the conveyance for the benefit of the plaintiff, and afterwards, in the year 1890, conveyed it to the plaintiff, and later made to the plaintiff an assignment, etc. The situation presented by the defendant's railroad is that there are four tracks, resting on posts, in front of the plaintiff's premises, and tracks extending along the easterly and westerly sides of the plaintiff's premises from the main tracks on Broadway. In fact, the defendant occupies, and uses as a yard, lands on the easterly, northerly, and westerly sides of, and adjacent to, the plaintiff's property, in which yard are tracks, shops, etc., for the purposes incidental to the operation of such a railroad, and is the only yard the company has for such purposes. On the easterly side of the plaintiff's premises the defendant's engines are run in to dump ashes and cinders, and on the westerly side are the defendant's coal dumps. It is evident that not only the elevated road in front of the premises, but the dumping of ashes and coal on the easterly and westerly sides of them, render the property less desirable for occupation as a dwelling place. From what occurred at the trial, it may be assumed that the effect which the evidence tended to prove resulted from the dumping of ashes and cinders, before referred to, was the subject of consideration there, since the motion made by the defendant's counsel at the close of the evidence, that the court either strike out or disregard the evidence relating to the dropping of ashes and cinders near the property, inasmuch as they were dropped upon the ground of the defendant, was denied by the court. This motion was supplemental to an exception taken on the trial to the same effect.

It appears that the defendant's railroad was constructed and operated in Broadway pursuant to legislative and municipal authority. In such a case, and to the extent of the grant of authority, the defendant did not become liable for merely consequential damages, unless they were occasioned by its misconduct or negligence. Atwater v. Trustees, 124 N. Y. 602, 27 N. E. 385; Fobes v. Railway Co., 121 N. Y. 505, 24 N. E. 919; Talbot v. Railroad Co., 151 N. Y. 155, 45 N. E. 382. Whatever may have been the view on the subject before the Story Case, 90 N. Y. 122, since then the interference with the beneficial enjoyment of light, air, and access of an abutting owner on a street, by the occupants in the use of it, has been deemed the invasion of his property, although he had no property right in the street, other than in such easement; and the struggle made in Lahr v. Railway Co., 104 N. Y. 268, 10 N. E. 528, to obtain from the judgment of the court a particular limitation of that doctrine, was ineffectual. The remedy for the injunctive relief of the character of that sought by this action rests upon the invasion of the property of the plaintiff. Kane v. Railway Co., 125 N. Y. 164, 26 N. E. 278; American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252, 29 N. E. 302. And so

far as relates to the easements of light, air, and access appurtenant to the premises in question, the plaintiff is entitled to recover such damages as have resulted from the occupation of the street in front of such premises. Such damages which go to depreciate the value of the property give support to injunctive relief.

But when we come to consider the manner in which the defendant's premises adjacent to those of the plaintiff were used, and the .effect of such use upon the enjoyment of the latter, a different question arises. The defendant had the right, as essentially incidental to the operation of its railroad, to acquire land for the accommodation of its business. It must have a place to deposit its coal for fuel, for discharging ashes and cinders, for shops, for storage of cars, etc. The defendant, however, had no specific legislative grant to locate its yard at that place, and the question may arise whether the right to do what the defendant did in that respect came within the power implied from that expressly conferred. That may be dependent upon the further question whether it was reasonably exercised with a view to the rights of others. The question arose in Cogswell v. Railway Co., 103 N. Y. 10, 8 N. E. 537, where the company located an engine house so near the premises of Cogswell that smoke, soot, cinders, and coal dust came from it into his house. In delivering the opinion of the court, Judge Andrews said that:

"The statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury."

This principle and case have been recognized and adopted by other cases. Bohan v. Gaslight Co., 122 N. Y. 18, 25 N. E. 246; Morton v. Mayor, 140 N. Y. 207, 35 N. E. 490; Spring v. Railway Co., 88 Hun, 385, 34 N. Y. Supp. 810. On the part of the plaintiff, evidence was given to the effect that ashes and cinders, when dumped from the ashpans of the engines, flew into the house, when the windows were open, rendering the occupation of the premises uncomfortable. The application of the doctrine of the Cogswell Case and kindred cases permitted such a view of the use made of the adjacent premises by the defendant, in the dumping of ashes and cinders where and as they were discharged from the ashpans of the engines, as might enable the court to take that into consideration as an element of damage. But this could be treated as past damage only. It could not properly be included in the fee damages. American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252, 269, 29 N. E. 302; Bischoff v. Railway Co., 138 N. Y. 257, 262, 33 N. E. 1073. It is only the invasion by the defendant of the plaintiff's easements of light, air, and access as an abutting owner on the street, and damage resulting therefrom, which permit injunctive relief. When the equitable jurisdiction is supported, the court, as incidental to the main relief, may assess and award past damages. Lynch v. Railway Co., 129 N. Y. 274, 29 N. E. 315; McGean v. Railway Co., 133 N. Y. 9, 30 N. E. 647; Hunter v. Railway Co., 141 N. Y. 281, 36 N. E. 400. It cannot be ascertained from the findings of the court whether anything was allowed by way of damages for the infliction of injury upon the plain-

tiff's premises by the ashes and cinders blown upon them from the defendant's dumping place on the adjacent land, or, if allowed, whether it was not included in the past or rental damages only. Nor could this be shown by the decision of the court, because it does not appear that this element of damage was a factor in the evidence on the subject, otherwise than inferentially from the fact that such condition existed. The learned counsel for the defendant did not, upon the trial, raise the question relating to the ashes and cinders, founded upon the distinction hereinbefore mentioned as between the fee and past damages, for the reason, perhaps, that it made no difference to his client in which class of damages it was included, if any damages should be awarded for that cause or injury. But the objection was taken from time to time on the trial that no damage was allowable for the consequence to the plaintiff's premises resulting from the dumping of ashes and cinders by the defendant on its own land; and therefore exception was taken to the reception of any evidence tending to prove such dumping of ashes and cinders, and the consequences to the plaintiff's premises. If we are correct in the view taken, there was no error in the reception of the evidence, nor in the refusal of the court to strike it out or disregard it. Some other exceptions were taken to evidence received, but there was no error to the prejudice of the defendant in any of the rulings of the court in that respect.

Much attention is given in the argument of the defendant's counsel to the asserted proposition that the damages awarded by the judgment are excessive, and this question is discussed by him with much force and ability. There is a marked conflict in the evidence introduced in behalf of the respective parties on this subject. The sum allowed for rental damages is fully up to the amount which the evidence permitted, but the amount allowed for the permanent or fee damages is between, and some ways from, the two extremes of the conflicting evidence. It is deemed unnecessary to expressly refer here to the evidence in detail. From a careful examination of the evidence, it appears that there was a question of fact presented by it, upon which the court was warranted in assessing, and did assess, the amounts of both classes of damage; and, in the view which the trial court was permitted to take of the evidence, it is not seen that the conclusion there reached was against the weight of it.

The judgment should be affirmed. All concur.