## NUISANCES.

[Circuit Court of Cuyahoga County.]

THE STANDARD BAG & PAPER COMPANY v. THE CITY OF CLEVELAND.

Decided, November 30, 1903.

*Jurisdiction in Equity—Action Does Not Abate Upon Transfer of Plaintiff's Title, When—Knowledge of Plans and Silence Alone not Such Laches as to Estop—Public Nuisance by Plaintiff No Answer to Private Nuisance by Defendant, When—Prescription as Defense in Nuisance Case—No Joint Liability for Several Nuisances—When Damages Computed to, in Equitable Action.*

1. In an action to restrain the commission of a nuisance and to recover damages therefor, equity has jurisdiction and damages may be awarded, even if the court for some reason considers that it will not grant an injunction.

2. Such action does not abate upon transfer after suit brought of plaintiff's title to the property damaged by continuance of the nuisance, if plaintiff's grantee participates in the trial and ratifies its prosecution.

3. Mere knowledge that a city is constructing a system of sewers at large expense which may cast filth upon one's land, and failure to protest, when it does not appear that the plaintiff in any way encouraged the adoption of the system, or induced the city to so direct its sewers, do not work an estoppel or constitute such laches as to bar a recovery in an action against the city for maintaining a nuisance.

4. In an action against a city by the proprietor of land within it through which runs a stream, to restrain the city from polluting the stream to his special damage, it is no defense that the proprietor also pollutes the stream, contributing to a public nuisance, no special damage to the city as a lower riparian proprietor being shown.

5. Prescriptive right to flow sewage into a stream can be maintained as a defense only for the quantity of sewage originating the right, and not for any increase thereof.

6. Where a city and individuals are casting filth into a stream to the damage of a lower riparian proprietor, the city can be held liable only for the *quantum* of pollution caused by itself, and not for that caused by individuals though they are situated within the limits of the city.

7. In an equitable action to enjoin a nuisance and for damages, the damages if allowed should be computed to the first day of the trial term.

WINCH, J.; HALE, J., and MARVIN, J., concur.

Appeal by defendant.

This is an action tried to the court on appeal from the common pleas court, the plaintiff alleging that it has been specially damaged in its business of making paper, by the acts of the city of Cleveland in emptying certain sewers into Kingsbury run, a natural water-course flowing through plaintiff's premises.

The petition sets forth that plaintiff in its business formerly used the water from the run in large quantities, but that in 1898 the pollution of the stream from said sewers became so great that it was compelled to largely discontinue the use of said water and to purchase it from the city, whereby it was greatly damaged, and for which damages it asks judgment, and further prays for an injunction restraining the city from continuing to discharge its sewers into said run.

The city has interposed certain defenses which are hereinafter considered.

A preliminary inquiry must be made as to whether this action can be maintained in equity.

It is well settled in Ohio that a municipal corporation which causes its sewage to be emptied into a natural water-course, thereby creating a nuisance inflicting special and substantial damages to a riparian proprietor, is liable in an action for the damages so sustained. *City of Mansfield* v. *Balliett,* 65 O. S., 451; *City of Mansfield* v. *Hunt,* 19 C. C., 488; *Rhodes* v. *City of Cleveland,* 10 Ohio, 160.

The jurisdiction of courts of law over cases of private nuisance is not, however, exclusive.

It was said in the case of *Fox* v. *City of Fostoria,* 14 C. C., 471, 481:

"It may be conceded plaintiff might bring and maintain suits for damages in every instance where he suffers damages and might recover. But inasmuch as the obstruction here is

permanent, entailing damages continuously and necessitating frequent and continuous litigation with uncertain results and certain costs, expense and trouble, we suggest that the remedy at law is not adequate."

While equity has assumed jurisdiction of nuisance cases for many reasons, among which may be mentioned the following: because compensatory relief is insufficient and preventative remedy is necessary to the ends of justice; because the cause of action is continuous and the nature of the damage is such as not to be susceptible of proper assessment by a jury; and because the damages are too small to warrant a judgment—perhaps the principal reason why equity takes jurisdiction in cases of continuing nuisance is because thereby multiplicity of suits is avoided.

The prevention of a multiplicity of suits is a very favored object with courts of equity and perhaps more favored in Ohio than in many other states. The extent to which the doctrine has been carried is illustrated by the case of *Blair* v. *Newbegin,* 65 O. S., 425.

Plaintiff's petition and proof bring it squarely within this equity jurisdiction. We have in this case a continuing nuisance which is causing special damage to the plaintiff in its business; as often as a suit at law may be brought to assess such damages a new cause of action arises out of the same relation of the parties and continues until another such suit may be brought. Hence arises a multiplicity of suits. Again, compensatory relief under the circumstances of this case is certainly insufficient and preventive relief is prayed for; whether or not, in view of the situation of the defendant, preventive relief will be granted, does not affect the jurisdiction of the court. Such is the doctrine laid down by Pomeroy on Remedies and Remedial Rights, Section 78:

"When the plaintiff possesses or supposes himself to possess primary rights, both legal and equitable, arising from the same subject matter or transaction, and avers the necessary facts in his pleadings and prays for both the remedies corresponding to the different rights, but on the trial fails to establish his equitable cause of action, his action should not therefore be dismissed."

This doctrine was followed in the case of *Lynch* v. *Elevated R. R.*, 129 N. Y., 274, and many similar cases might be cited, so that we conclude that in an action to restrain the commission of a nuisance and to recover damages therefor, equity has jurisdiction and damages may be awarded even if the court for some reason considers that it will not grant an injunction.

Without reciting all the facts in this case, which would be more properly set out in a finding of facts than in an opinion, the general rules above set forth, unless there is such merit it is sufficient to say that plaintiff has made out a case under in one or more of the several special defenses interposed by the city as to preclude any relief for plaintiff.

Let us examine these special defenses.

1. It is admitted that after the commencement of this action in the court below, plaintiff parted with its title and the possession of its property on Kingsbury run, and from this fact it is argued that it thereby divested this court of jurisdiction of this cause, and that plaintiff must be remitted to its action at law; that equity can not raise its arm to protect a party in the enjoyment of something that party has lost by its own voluntary act.

In this court, however, as well as in the court below, the grantee of plaintiff and present owner of the property appeared at the trial of the case, ratified its prosecution by the plaintiff and participated in the trial.

Plaintiff claims that Section 5012, Revised Statutes, applies, and that no duty rests upon it to have any affirmative entry made by the court regarding the transfer of title. That the suit is *lis pendens* and its determination binds the actual owner. That if the defendant for any reason desires substitution or joinder, it should ask for it.

We think plaintiff is right.

Section 5012, Revised Statutes, after providing that actions shall not abate on account of the marriage of a female party or upon the disability of a party, reads:

"And upon any other transfer of interest the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted for him."

We think this action may continue in the name of the original party. Of course, the new owner of the property will be bound by any order made in this case, though it has made no application for substitution. The statute fits the case exactly, and in this conclusion we are not without authority to sustain us.

In the case of *Stufflebeem* v. *Adelsbach*, 135 Cal., 221, being an injunction suit to restrain interference with a ditch, a similar statute was similarly applied.

In the case of *McGean* v. *M. R. R. Co.*, 133 N. Y., 9, an action to restrain the operation and maintenance of defendant's elevated railway on a street in front of plaintiff's premises and to recover damages, a similar construction was put upon a similar statute.

2. From the fact that the evidence shows that the president of the plaintiff company was present and had knowledge of the system of sewers which was being constructed by the city at large expense, at the time of their construction; that he at that time made no protest; that he made no inquiry at the city hall to ascertain the extent of the contemplated discharge of sewage and was silent, it is argued that by his conduct he acquiesced in the construction of said sewers, and that therefore plaintiff should be estopped from maintaining this action.

We do not think the facts in the case warrant the application of the doctrine of estoppel. In the language of the opinion in *Chapman* v. *Rochester*, 110 N. Y., 273:

"It does not appear that the plaintiff in any way encouraged the adoption of that system or by any act or word induced the city authorities to so direct the sewers that the flow from them should reach his premises."

See also *Cilly* v. *City of Cincinnati* (Hamilton Co. District Court), 2 W. L. B., 135, and *Fox* v. *City of Fostoria*, 14 C. C., 471.

3. The defense of laches pleaded in the second amended answer is based upon the same facts as the defense of estoppel, and fails for the same reason that that defense fails.

4. Defendant urges that plaintiff should have no standing in a court of equity because for twenty years it has been doing

the very thing which it complains that the city is doing—in other words, that plaintiff's hands are not clean.

It was shown in the evidence that below the place where plaintiff has been drawing water from Kingsbury run it has an effluent that carries back into the run a large volume of water holding in suspension and solution the dirt, coloring matter and chemicals coming from the working of rags and paper used in its business, and also some sewage. The city says it has a right to make this defense because it is itself a lower riparian proprietor as well as an upper proprietor, and the subject matter of this suit is the pollution of Kingsbury run.

While the city may be a lower riparian proprietor, it does not appear that it has ever complained of the acts of plaintiff in polluting the stream, nor has it shown or attempted to show any damage to it therefrom. The subject of this suit is not alone the polluting of Kingsbury run but the special damage resulting therefrom.

It is not a public nuisance which plaintiff, as one of the public, seeks to abate, but a private nuisance causing it special damage. The defendant city may complain that plaintiff is causing a public nuisance but that matter is not an issue in this case.

5. Defendant pleads a prescriptive right to use Kingsbury run for sewage purposes. This would be a good defense if proved, subject to the limitations usually put upon such prescriptive rights by the courts and set forth in 21 Am. & Eng. Enc. of Law, 735, as follows:

"The right of prescription is restricted to and measured by the adverse user that originates it; it must be shown that the user, during the entire period by which the right is fixed, has produced an injury of the same grade and character as that complained of. For any increased user causing material injury the right of prescription can not be set up as a defense."

The facts in this case show that for more than twenty-one years defendant has used Kingsbury run for the disposal of a certain amount of sewage, but that such use has increased materially in the last few years. The amount of sewage that defendant has thus proved its right to throw into Kingsbury run can be ascertained from the facts and the matter will be

again adverted to when we come to the question of whether or not plaintiff has proved that it has been substantially damaged as claimed by it.

6. Defendant claims that plaintiff has not shown by a fair preponderance of the evidence that the city of Cleveland has caused the pollution that has rendered impossible the use of Kingsbury run in the manner that plaintiff was using it for mechanical purposes, but that it is just as fairly deducible from the evidence that others may have caused it, and that therefore defendant is not liable.

To sustain this proposition defendant's counsel cite as follows:

In 77 N. Y., 51, the Court of Appeals of the State of New York declared this rule (syllabus):

"Where different parties pollute a stream by the discharge of sewerage thrown by each from his own premises, and each acting separately and independently of the others, one of the number is not liable for all the injury sustained by another because of the nuisance thus created; each is liable only to the extent of the wrong committed by him."

On page 53, the court said:

"The liability commences with the act of the defendant upon his own premises, and this act was separate and independent of and without any regard to the act of others. The defendant's act being several when it was committed, can not be made joint because of the consequences which followed in connection with others who had done the same or a similar act. It is true that it is difficult to separate the injury; but that furnishes no reason why one tort feasor should be liable for the act of others who have no association and do not act in concert with him. If the law was otherwise, the one who did the least might be made liable for damages of others far exceeding the amount for which he really was chargeable, without any means to enforce contribution or to adjust the amount among the different parties. So also proof of an act committed by one person would entitle the plaintiff to recover for all the damages sustained by the acts of others who severally and independently may have contributed to the injury. Such a rule can not be upheld by any sound principle of law. The fact that it is difficult to separate the injury done by each one from the others furnishes no reason for holding that one tort

feasor should be liable for the acts of others with whom he is not acting in concert.''

In 57 Penn St., 142, the court said:

''True, it may be difficult to determine how much dirt came from each colliery, but the relative proportions thrown in by each may form some guide, and a jury in a case of such difficulty caused by the party himself, would measure the injury of each with a liberal hand.   But the difficulty of separating the injury of each from the others would be no reason that one man should be held to be liable for the torts of others without concert.   It would be simply to say, because the plaintiff fails to prove the injury one man does him, he may therefore recover from that one all the injuries that others do.   This is bad logic and hard law.   Without concert of action no just suit could be brought against the owners of all the collieries, and clearly this must be the test.''

From these authorities we gather the rule to be that while one tort feasor is not liable for the acts of others who have no association and do not act in concert with him, he is liable for his own acts.   Whether in this case from the evidence we can determine the quantum of pollution caused by the city, is another matter to be taken up when we come to the question of damages.   We agree with counsel for the city that for such quantum alone can the city be held liable.

7.   Having come to the conclusion that plaintiff has proved its case and that defendant has shown no good reason why plaintiff should not recover, it remains to inquire whether, in fact, plaintiff has been materially damaged by the acts of the defendant, and if so, to what extent.

We think the evidence fully shows:

''That the plaintiff's mill was located forty years ago on the banks of the stream known as Kingsbury run in the city of Cleveland, and has ever since continuously been devoted to the manufacture of paper; that the mill site contains about nine acres of land; that the mill was operated up to April 20, 1898, under the ownership of The Cleveland Paper Company. From April 20, 1898, to February 1, 1903, under the ownership of The Standard Bag & Paper Company; and since February 1, 1903, the Cleveland-Akron Bag Company, grantee of the present plaintiff; that the capacity of the mill has greatly increased, there having been a one-tenth increase in its out-put since April 20, 1898; that the improvements on the property

consists of extensive buildings, complicated and valuable machinery, requiring about 450 horse power now furnished by an engine of the compound condensing type, but prior to November, 1900, by three engines, one of which of about 300 horse power, was of the simple condensing type; that it required about the same amount of water for the condensation in the old engine that it does in the new; that the process of manufacture in the mill is the *customary one* requiring the free use of water for washing, beating and the preparation of raw material; that water is required for the operation of the paper machines, for use in the boilers and in the condenser; that the total requirements and actual use since 1898 have been one million gallons daily; that the owners have taken unusual pains to procure water adapted to their purpose from springs and other sources more or less permanent, and more or less remote from their manufacturing site, piping water for distances of one-half to two-thirds of a mile from their sources; that the plaintiff has available for use in its mill from springs and other sources of supply which do not involve a great expense, about four hundred thousand gallons of water daily, a portion of which is furnished them permissively and might be withdrawn at any time; that they are under the necessity of obtaining about six hundred thousand gallons of water daily from other sources; that in 1891, under a change of management, the demand for water for the first time was so increased beyond the former sources of supply as to necessitate procuring it elsewhere; the only available sources of supply were the water furnished by the city of Cleveland through its water works system, and the water flowing through the plaintiff's premises in the bed of Kingsbury run. An intake was then constructed from Kingsbury run, protected with a strainer and equipped with a filtration plant, and the water was conducted from the run into the pump and condenser of the engine. The product of the engine condenser was pumped into a tank on the hill side, being at a temperature of about 114 deg., Fah., and from there was all drawn down into the mill and used in the usual process of manufacture. These processes are such as to require the heating of the water. Prior to the year 1898 the plaintiff had found it necessary to occasionally clean filth from their screen at the intake and to take out and renew the filter and remove from it filth which had accumulated therein. This accumulation of filth both on the screen and in the filter and evidence of its existence in the water as used in the mill, rapidly increased during the year 1898, until in the fall of that year in November it became impossible to so remove from the water taken from Kingsbury run the foreign matter in it as to permit of its use. Since that time the product of the

condenser has of necessity been largely wasted, only one-sixth of it being available for the manufacture of paper, and that only in the earlier process for washing of extremely dirty material. The plaintiff was then obliged to and did heat the water in its washers and beaters by the induction thereto of live steam, and was obliged to and did use a larger amount of water from the only other reasonably available source of supply, namely, the water works of the city of Cleveland.

"It appears that the waste by the necessity of discharging and throwing away five-sixths of this heated water causes a direct money loss to the plaintiff, which has been ascertained to a reasonable certainty by the testimony of experts in the employ of the city and otherwise."

From the evidence we are also able to determine with reasonable certainty the quantity of sewage which the defendant has established its prescriptive right to carry into the run.

As to the quantum of pollution caused by others, including slaughter houses, oil refineries, rolling mills, foundries and other manufacturing establishments, some twenty-one in number, and about one hundred private water closets, all located near Kingsbury run, and emptying into it, the proof is not so definite, but we are able to estimate it with some degree of certainty.

Deducting from plaintiff's total damage occasioned by the necessity of throwing away five-sixths of its heated water, on account of the pollution of the water in the run, that portion of said damage resulting from prescriptive pollution, if it may be so called, and the pollution occasioned by others than the city, there remains the damage specially and directly caused by the city and for which it is liable. This damage we have computed and averaged by the month, beginning the computation April 20, 1898.

Defendant claims that damages should be computed only to the filing of the petition, July 6, 1900. Plaintiff contends that it is entitled to damages down to the day of trial in November, 1903.

It appears that in law cases for damages only, defendant is right, but it would seem to be otherwise where the damages are to be ascertained by a court of equity. As we have heretofore stated, one of the reasons why equity retains control of suits involving damages by trespass and nuisance, though preventive relief may be denied, is for the purpose of avoiding

a multiplicity of suits and computation of damages to the trial day, is within the spirit of that purpose. Webb's Pollock on Torts, 519; *People* v. *Mould,* 37 Hun., 38; *Lynch* v. *Elevated R. R.,* 129 N. Y., 274.

In this state interest begins to run on judgments from the first day of the term at which they are rendered, and for that reason in this case we compute the damages to the first day of this term, October 19, 1903, instead of to the day of trial, and for the period of sixty-six months intervening between April 20, 1898, and the first day of this term of court, we find that by the acts of defendant the plaintiff has been damaged in the manner claimed by it in the sum of $6,600.

An injunction, however, is refused. The granting of an injunction is always largely in the discretion of the court and the results to the public at large, now using the sewers we are asked to abate, must be considered. It appears from the proof that many private houses and manufacturing and mercantile establishments in the city of Cleveland are now connected with these sewers, which have been built at large expense. The health, as well as comfort and convenience, of thousands of citizens depends upon maintaining an outlet for the sewers, and no other outlet is practical or can be obtained under the present system of sewage disposal in use in the city.

Again, an injunction should restrain the city from emptying only part of said sewage into Kingsbury run, because the city has shown its prescriptive right to flow a certain amount of sewage thereinto and such a partial abatement would be impracticable and difficult to enforce.

Speaking for myself alone, I think the city should be compelled to install at the mouths of all sewers running into Kingsbury run and other runs, and thence into the Cuyahoga river, modern and scientific sanitary plants for the interception and reduction of all polluting matter effluent from such sewers, but the court is unwilling to put the city to such expense at this time.

Decree for plaintiff.

*Norton T. Horr,* for plaintiff.

*Newton D. Baker,* for defendant.