## KINSMAN et al. v. UTAH GAS & COKE CO.

No. 3054.    Decided Dec. 3, 1918.    (177 Pac. 418.)

1. APPEAL AND ERROR—EQUITABLE PROCEEDINGS—REVIEW OF EVIDENCE. Although the Supreme Court will and it is its duty in equitable proceedings to review the testimony and determine its weight, much consideration must be given to the trial court's findings, particularly in a case to restrain a nuisance, where the court visited the scene of the alleged nuisance.[1]    (Page 16.)

2. NUISANCE—GAS PLANTS.  A gas plant whose odors are disagreeable, and cause persons residing near by to suffer nausea and headache, and which depreciates the value of their homes, constitutes an actionable nuisance, under Comp. Laws 1907, section 3506. (Page 16.)

3. NUISANCE—INJUNCTION—DEFENSE—INJURY TO DEFENDANT.  That defendant, a gas company, is engaged in supplying gas in a large city, that there is no other present source of a supply of gas, and that damage resulting would be much greater to the gas company than to surrounding inhabitants, are not of themselves sufficient to justify a court in refusing injunctive relief.    (Page 17.)

4. NUISANCE—INJUNCTION—LACHES.  Where a gas plant was erected in 1906, and emitted offensive odors, and the size of the plant was doubled in 1910, at great expense, plaintiffs, standing by and doing nothing except file written protests with the city officials against the enlargement of the plant, were guilty of laches, and a permanent restraining order should not be granted against the operation of the gas plant, and plaintiffs should be limited to money damages.[2]    (Page 19.)

5. NUISANCE—GAS PLANTS—INJUNCTION—LACHES.    The operation of a gas plant is not a nuisance per se, and persons living in the vicinity in which a gas plant was erected should not be charged with the knowledge, prior to the completion and the operation of the same, that it would be so operated as to cause it to be a nuisance. (Page 19.)

6. EQUITY—COMPLETE RELIEF.  In an equity action, where the prayer is for both specific and general relief, the court, having acquired jurisdiction of the parties and the subject-matter, will retain that

[1]Utah Commercial & Sav. Bank v. Fox, 44 Utah, 331, 140 Pac. 660; Campbell v. Gowans, 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660.

[2]Lewis v. Pingree Nat. Bank, 47 Utah, 48, 151 Pac. 558, L. R. A. 1916C, 1261.

jurisdiction until justice has been done, although the equitable re-
lief sought is denied, especially in this state, where there is but one
form of civil action.[1]   (Page 22.)

7. NUISANCE—INJUNCTION—DENIAL—DAMAGES.     Where    fifty-nine
persons bring action to restrain as a nuisance the operation of a gas
plant and for general relief, each having a separate and individual
claim or right of action for damages growing out of the same tres-
pass on the part of the defendant company, the only separate issue
being the amount of compensation due each plaintiff, the court
should, on denying equitable relief, allow the plaintiffs to amend,
and determine the amount to which each plaintiff is entitled, with-
out requiring them to bring separate actions.  (Page 23.)

8. PARTIES—INTERVENTION—PERSONS ENTITLED.   In an action by
property owners to restrain a gas company from maintaining a
nuisance, where injunction was denied, any other party similarly
situated as the plaintiffs should be allowed to intervene, the action
being reduced to one for damages.   (Page 24.)

Appeal from the District Court of Salt Lake County, Third
District; *Hon. T. D. Lewis,* Judge.

Action by Hattie G. Kinsman and others against the Utah
Gas & Coke Company.

Decree for plaintiffs.  Defendant appeals.

AFFIRMED in part, and REVERSED and remanded in part,
with directions.

*Richards & Richards, C. C. Richards* and *F. C. Loofbourow*
for appellant.

*Weber, Olson & Lewis* for respondents.

GIDEON, J.

Plaintiffs, fifty-nine in number, by this action seek to en-
join the defendant from operating its gas plant at its location
in the western part of Salt Lake City.

---

[1] *Morgan* v. *Child, Cole & Co.,* 41 Utah, 564, 128 Pac. 522; *Mills* v.
*Gray,* 50 Utah, 224, 167 Pac. 358;  *O'Neill* v. *Mutual Life Ins. Co. of N.
Y.,* 172 Pac. 306.

Plaintiffs are residents and owners of property in the immediate vicinity of the gas plant. The residences are located within a radius of 132 to 800 feet from said plant. It is alleged that in the operation of the gas plant cinders, smoke, obnoxious and poisonous gases are discharged on the premises of the plaintiffs, and as a result the air is polluted and made poisonous to such an extent as to cause great inconvenience to plaintiffs and their families; that such gases cause sickness, such as nausea, headache, etc., and that by reason thereof the homes of plaintiffs have become unhealthful and unfit for enjoyment, and the market and rental value of said premises has been greatly depreciated.

The defendant in its answer admits the ownership and operation of the gas plant. There is a general denial of the other allegations of the complaint.

The court, among others, found the following facts:

(a) "That the defendant now is, and ever since March 21, 1906, has been, a corporation organized under the laws of the state of Utah, and that since its organization it has built and constructed a large plant for the manufacture, generation, sale, and distribution of gas in Salt Lake City, Utah, on First South street, and between Ninth and Tenth West streets, and that defendant's said plant is near the properties and homes of the plaintiffs, and in a district of Salt Lake City that is both residential and manufacturing."

(b) "That said defendant at said place manufactures and generates gas in large quantities, and produces gas for fuel and illuminating purposes."

(c) "That the plaintiffs herein own residence property near the plant of the defendant, said property being hereafter more fully described."

(d) "The court finds that carbon monoxide, a very poisonous and nonodorous gas, is produced in large quantities by the defendant at its said works, but that from the evidence the court is not justified in finding that there is sufficient carbon monoxide in the atmosphere at any place, either on the defendant's premises or on the public highways or on the premises of the plaintiffs, to produce any symptom of carbon monoxide poisoning, or any injury to health, and the evi-

dence wholly fails to justify the court in finding that sulphuretted hydrogen escapes from the defendant's premises in quantities to be injurious to health. But the court does find that the operation of said gas works and manufactory causes gases and fumes to be emanated therefrom that are offensive and disagreeable to the sense of smell; that said gases and fumes are offensively odorous and noxious; that they reach the premises of the plaintiffs herein and render the air impure and unwholesome; that they are deleterious to health, in that they irritate the mucous membrane and cause headache and nausea to many of the plaintiffs or to members of their families; that they annoy and injure the comfort and repose of the plaintiffs herein and members of their families, and so interfere with the comfortable enjoyment of life and of the property of the plaintiffs and of each of them as to render said property less fit for habitation for residence purposes; that said annoyance, discomfort, and injury is substantial and material to each of the plaintiffs, but in varying degree, and in some cases rendering the premises of the plaintiffs wholly unfit for residence purposes.''

(e) ''That by reason of said offensive and noxious gases and fumes reaching the premises of the plaintiffs herein from the defendant's said gas plant, and from the operation thereof, the rental and market value of the plaintiffs' property are very materially injured and depreciated, and renders said property so uncomfortable and so unfit for habitation as to justify the plaintiffs in asking, and the court in granting, the permanent injunction prayed for by the plaintiffs herein.''

(f) ''The court further finds that the noises emanating from the defendant's gas plant, as the same is now being operated, it having been admitted on the trial by the plaintiffs that since certain improvements were installed by the defendant the noises complained of at the time of the filing of the complaint were greatly lessened, and not now so annoying or disturbing to the plaintiffs as to constitute in themselves a nuisance, or to give rise to any cause of action against the defendant.''

(g) ''The court further finds that it is not shown by a preponderance of the evidence that the vegetation on the

premises of the plaintiffs is injuriously affected by the gases emanating from the defendant's plant."

(h) "That the interference, annoyances, injuries, and damages to the plaintiffs and to their premises by the defendant through its operation of said gas plant and manufactory are continuously recurring; that prior to and since · the commencement of this action, and during the trial of this cause, the defendant has made every possible effort to itself abate said nuisance, and to prevent the emanation of said offensive and noxious gases and fumes from its plant during the operation thereof, but that the defendant is unable by any device to abate said nuisance, and that the same cannot be abated except by discontinuing the operation of said gas plant and manufactory in its present locality, and that said nuisance, if the operation of said gas plant and manufactory is permitted to continue, is a permanent nuisance to the plaintiffs herein and to their property."

From the foregoing, as conclusions of law, the court found:

"That the operation of the gas plant and manufactory of the defendant upon the premises now occupied by it constitutes a permanent nuisance to plaintiffs, and to the premises of the plaintiffs, against which the plaintiffs have no plain, speedy, nor adequate remedy at law, and that plaintiffs are entitled to the relief prayed for in their complaint."

A decree was accordingly entered enjoining the defendant, after a period of 90 days, from operating its gas plant and manufacturing gas upon said premises, or in any locality from which the fumes and gases produced would reach the premises of the plaintiffs.

The defendant brings the case to this court on appeal.

It is vigorously contended that the findings of the court are not supported by the evidence, and this court is asked to review the testimony given and determine its weight. More than 300 witnesses were examined, and the trial of the case covered a period of something like eighty days. Much of the testimony is contradictory. Engineers were heard by the court who detailed at great length the process of manufacture, the methods by which the smoke was conducted from the furnaces and retorts, how the gas was conducted, and

demonstrated that, so far as it is possible, no gas or odor was permitted to escape into the atmosphere, and consequently none could reach the premises of the plaintiffs. Other expert testimony was adduced which, at most, could have but an argumentative effect, to-wit, the result of experiments made to determine the presence of poisonous gases in the air around the premises of plaintiffs. Many other witnesses were heard for the defendant to the effect that while in or about the gas plant they had at no time observed any offensive odor in or near the plant or upon the premises of the plaintiffs.

The trial court, by agreement of all parties, during the pendency of the action visited the gas plant in company with counsel, and also alone at numerous times, and had opportunity to and did observe the locality, situation of plaintiffs' residences, the method of operating the plant, and from such personal visits was able to better understand and weigh the testimony of the witnesses than one not having that opportunity, and to determine from such personal observation the presence of offensive and noxious odors emanating from the gas plant and finding their way to the premises of the plaintiffs.

The plaintiffs' witnesses testified that, notwithstanding every effort made on the part of the defendant company to prevent the offensive odors escaping from the gas plant, it had not been successful, and that there were, periodically and at times continuously, offensive and noxious odors coming from the gas plant and entering upon the premises of the plaintiffs and into their homes. The weight of the testimony respecting the effect upon the health of the plaintiffs or the members of their families is not as convincing, conclusive, or satisfactory as that given in support of the other findings. I do not, however, understand from the court's findings that any serious sickness results, or is likely to result, from the odors coming from the defendant's plant, but merely that such offensive odors are deleterious, thereby causing nausea, etc., which, at most, is but temporary in its effect.

The defendant first constructed its gas plant in the years 1906-07, and enlarged the same about the year 1910. With-

out exception the testimony shows that the homes of the plaintiffs were built and occupied prior to or about the time the gas plant was first constructed.

While this court will, and it is its duty in equitable proceedings to, review the testimony and determine its weight, of necessity much consideration must and will be given to the trial court's findings, not only because such court heard the witnesses and had an opportunity to observe their demeanor upon the witness stand, their means of knowledge, their interests, etc., but particularly in this case greater consideration should be given to the court's finding by reason of the court's opportunity in visiting the plant and vicinity, and seeing from personal investigation and observation the conditions that exist there, and determining whether or not such offensive odors, fumes, etc., do emanate from, and are allowed to escape from, defendant's plant, and whether the same permeate the air about and enter the homes of the plaintiffs to such an extent as to render said premises uncomfortable and unfit for residential purposes. *McCarthy et al. v. Bunker Hill & S. M. & C. Co.*, 164 Fed. 927, 92 C. C. A. 259; *Utah Commercial & Sav. Bank v. Fox*, 44 Utah, 331, 140 Pac. 660; *Campbell v. Gowans*, 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660.

It would be a burdensome and useless task to attempt an extended review of the testimony taken in this case, and the limits of this opinion will not permit of such a review. There can, however, be no contention that there is not substantial evidence in the record to support the court's findings; and after a careful reading of the entire volume of testimony, a consideration of the means of knowledge of the various witnesses, the fact that many of the defendant's witnesses had resided only a short time in the vicinity of the gas plant, and that some of them had never resided there at all, and the fact that the court had personal opportunity of investigating as herein stated, we are clearly of the opinion that the court's findings are supported by the weight of the evidence.

That such trespass upon the rights of plaintiffs and disturbance of plaintiffs in the full enjoyment of their homes constitutes an actionable nuisance, as defined by

our statute (Comp. Laws 1907, section 3506), we have no doubt.

Notwithstanding the findings of the trial court and the above conclusions of this court (that such findings are supported by the weight of the testimony), it appears from the record that at the trial numerous witnesses testified on the part of the defendant that they had at no time observed any noxious fumes or gases in or about the premises or plant of the defendant or upon the premises of the plaintiffs. The means and opportunity of observing and noting the condition surrounding the gas plant were equally as good on the part of these witnesses as that of the plaintiffs. The residences of such witnesses in some instances adjoined the homes of some of the plaintiffs. It is for that reason earnestly insisted and urged upon this court by the appellant that the fact that defendant is so operating its plant as to interfere with the comfortable enjoyment of plaintiffs' homes is not shown by such clear and convincing proof as would authorize or justify a court of equity in issuing the extraordinary and harsh remedy of injunction. It is also insisted and urged, as a further reason for withholding injunctive relief, that this court should consider the resulting damages to the parties; that it appears that the defendant is engaged in a lawful occupation, is supplying gas to the inhabitants of Salt Lake City; that there is no other present source from which such inhabitants can obtain a supply of gas; and that if the injunction shall be made permanent the defendant will be under the necessity of constructing a new plant, or of removing its present plant, at great cost, and that during the time of its removal the inhabitants of Salt Lake City, patrons of the defendant, will be deprived of necessary gas for domestic and industrial purposes. It is also contended that the court should balance the equities between the parties, and if the injury to defendant exceeds and is much greater than the damages sustained by plaintiffs the writ should be denied. The testimony is not conclusive as to the cost necessarily to be incurred in the removal and reconstruction of defendant's plant, but one witness placed its value at approximately $1,000,000. On the other hand, it is in the testimony that the property

separately owned by the plaintiffs, and which is injured or rendered less fit for habitation by operation of the gas plant, is approximately of the value of $375,000. The residences of the different plaintiffs are located at varying distances from defendant's plant, only a very few are within a radius of 350 feet or less, while the remainder are located from that distance to 800 feet. In the very nature of things, any noxious or offensive odors given off by defendant's plant would gradually diminish as the distance increases, and the relief to plaintiffs, whose homes are near the gas plant, might and should differ from the relief which should be granted to those whose residences are at greater distances from defendant's plant. The foregoing facts, either considered alone or jointly, are not of themselves sufficient to justify or authorize this court in refusing the plaintiffs injunctive relief, but are facts which should be considered by the court, together with all the other facts appearing in the record, in the final determination of the relief to which plaintiffs are entitled.

After the institution of this action and prior to the trial defendant made some extraordinary and extensive improvements in an effort to prevent the escape of gases and other offensive odors from its plant. It is true plaintiffs testified the odors were not decreased by the efforts of the defendant. Without attempting to state in detail those improvements, suffice it to say that the object sought to be obtained was to prevent the escape of smoke and gas from the retort house, and to carry the smoke and gases from the retort house through flues or pipes, in which all solid substances were washed from the smoke and by means of fans constructed for that purpose, forced into a large smokestack 129 feet high, and at that height released into the air. It is also shown that the fumes and gas from the revivifying material, which had prior thereto been allowed to escape into the atmosphere, are now confined in a building known as the revivifying house, and conducted from that house by means of pipes or ducts to the furnaces, and there consumed by fire. These improvements did and must of necessity have reduced to some extent the gases or fumes which had theretofore escaped into the atmosphere, and the statements of witnesses that the odors had been

getting worse of recent months are contrary to the physical surroundings proved to exist at defendant's plant.

It is undisputed in this case that the defendant, or its predecessor in interest, erected the gas plant at its present location in the years 1906-07. The plaintiffs, with scarcely an exception, testified they had observed the offensive    4, 5 odors and gases coming from the gas plant practically from the time of the beginning of its operation. True, they stated that in their judgments the offensive odors had been worse of recent years. It is also undisputed that in the year 1910, some three years after the completion of the plant and after the date when it began operation, the plant was enlarged by approximately doubling its capacity. That the plaintiffs were aware that such addition was being made is not a disputed question in the case. In fact it is urged that about the date of the enlargement some written protests were made by some of the residents of that community against the enlargement. Just what was done with the written protests does not appear in the record, except by inference from the fact that such protests were found among the files in the city recorder's office of Salt Lake City and produced at the trial. At any event no legal proceedings were taken by plaintiffs to prevent the enlargement of the gas plant by the defendant. That the same conditions existed prior to the enlargement, as indicated, is admitted, except in a lesser degree.

"They (the plaintiffs) contented themselves with a mere protest at some stage of the proceedings. Two courses were then open to them: (1) To file a bill in equity to enjoin the work on the ground that it would increase the nuisance already existing, and cause them irreparable damages; (2) to wait until the work was done, and bring an action at law for damages. They waited. Equity will not now lend its aid to a party to compel an expensive work to be undone which the party might, by planting a bill in equity in reasonable season, have prevented." *McKee* v. *City of Grand Rapids*, 137 Mich. 212, 100 N. W. 585.

That language, and the principle therein announced, was quoted and approved by this court in *Lewis* v. *Pingree Nat. Bank*, 47 Utah, 48, 151 Pac. 558, L. R. A. 1916C, 1261.

In my judgment a court of equity would not be justified in holding, and it is not so held in this case, that the operation of the gas plant is a nuisance per se; nor that the plaintiffs should be charged with the knowledge, prior to the completion and the operation of the same, that in the operation of this plant the defendant company would so operate it as to cause it to be a nuisance. It appears however, in this case, as indicated above, that the same objection to the operation of the plant existed prior to its enlargement, and notwithstanding that fact was known to the plaintiffs they stood by and permitted the defendant company, without attempting to assert their legal rights, to expend large sums of money in the enlargement and the equipment necessary for the operation of its plant to the capacity required by its patrons. In *Galliher* v. *Cadwell*, 145 U. S. 373, 12 Sup. Ct. 875, 36 L. Ed. 738, the court says:

"But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

In *Penn Mutual Life Ins. Co.* v. *Austin*, 168 U. S. 696, 18 Sup. Ct. 227, 42 L. Ed. 626, the court said:

"In *Speidel* v. *Henrici*, 120 U. S. 377, 387 [7 Sup. Ct. 610, 612 (30 L. Ed. 718)], the court said, speaking through Mr. Justice Gray: 'Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them. "A court of equity," said Lord Camden, "has always refused its aid to stale demands, where the party slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced; and, therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court."' * * *

"In *Hammond* v. *Hopkins*, 143 U. S. 224, 250 [12 Sup. Ct. 418, 427 (36 L. Ed. 134)], through Mr. Chief Justice Fuller, the court said: 'No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith, and reasonable diligence, but will discourage stale demands for the peace of society, by refusing to interfere where there have been gross laches

in prosecuting rights, or where long acquiescence in the assertion of adverse rights have occurred.' "

" 'Relief by injunction is not controlled by arbitrary or technical rules, but the application for its exercise is addressed to the conscience and sound discretion of the court. Where a party seeks the intervention of a court of equity to protect his rights by injunction, the application must be seasonably made, or the rights may be lost, at least so far as equitable intervention is concerned. It is a rule practically without exception that a court of equity will not grant relief by injunction where the party seeking it, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by and suffers his adversary to incur expenses and enter into burdensome engagements, which would render the granting of an injunction against the completion of his undertaking, or the use thereof when completed, a great injury to him. A suitor who by laches has made it impossible for a court to enjoin his adversary without inflicting great injury upon him will be left to pursue his ordinary legal remedy. This rule is especially applicable where the object of the injunction is to restrain the completion or use of public works, and where the granting of the injunction would operate injuriously to the public as well as to the party against whom the injunction is sought.' 16 Am. & Eng. Ency. of Law (2d Ed.) p. 356." *Stewart Wire Co.* v. *Lehigh C. & N. Co.*, 203 Pa. 478, 53 Atl. 1127.

However clear the plaintiffs may have established their rights and the trespass upon those rights by the defendant, under the rule announced in the foregoing citations it was incumbent upon the plaintiffs to exercise diligence and assert such rights within a reasonable time. It is shown by the testimony that the plaintiffs, with few exceptions, were residing in the vicinity of the gas plant at the time of its erection and were aware and had knowledge of the nuisance created by the operation of the plant prior to 1910, and notwithstanding that fact neglected to institute any proceedings to protect their rights, and in effect said to the defendant: "You are operating your plant as a nuisance, and we are aware of the fact; but we will permit you to enlarge it, and after you have expended the money necessary for such enlargement we will restrain you from enjoying your property." To issue the extraordinary remedy of injunction in such a case, and under the facts as disclosed by this record, would be an unwarranted hardship and an injustice to the defendant which a court of equity ought not to enforce.

Applying the foregoing conclusions to the facts in this case, the lower court was not justified in granting a permanent order restraining the defendant from the further operation of its gas plant. That conclusion, however, in no way deprives the plaintiffs of their rights to recover whatever damages they may have sustained in the past or what damages they will sustain to their property by the future operation of said plant.

The plaintiffs allege the depreciation of both the rental and market value of their homes, and the court found that such allegations were supported by the testimony. Plaintiffs prayed for both specific and general relief, and a court of equity, having acquired jurisdiction of the parties and the subject-matter, will retain that jurisdiction until justice has been done between the parties.

"The rule has already been stated, as one of the foundations of the concurrent jurisdiction, that where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law." Pom. Eq. Jur. 3d Ed. p. 231.

See, also, *Robinson* v. *Appleton,* 124 Ill. 283, 15 N. E. 761; *Browder* v. *Phinney,* 30 Wash. 74, 70 Pac. 264.

And that is true notwithstanding the equitable relief sought by the complaint is denied in an action where the facts, as here, are such that plaintiffs might reasonably have expected the court to grant the equitable relief sought. *Waite* v. *O'Neil* (C. C.) 72 Fed. 348, affirmed in 76 Fed. 408, 22 C. C. A. 248, 34 L. R. A. 550; *Combs* v. *Scott,* 76 Wis. 664, 45 N. W. 532; *Goddard* v. *American Queen,* 27 Misc. Rep. 482, 59 N. Y. Supp. 46.

In addition, in this state there is but one form of civil action for the enforcement or protection of private rights and for the redress or prevention of private wrongs, and law and equity may be administered in the same action. Such are the provisions of both the Constitution and the Code. To dismiss this action, and send the plaintiffs to their actions at law, would necessitate the filing of new complaints based

upon and containing the same facts as alleged in the complaint here, and to be presented to the same court, invested with like powers. Such proceedings would defeat the very object of the Constitutional and statutory provisions providing for only one form of civil action, and empowering the court to administer both equity and legal relief in the same action.

"Wherever the true spirit of the reformed procedure has been accepted and followed, the courts not only permit legal and equitable causes of action to be joined, and legal and equitable remedies to be prayed for and obtained, but will grant purely legal reliefs of possession, compensatory damages, pecuniary recoveries, and the like, in addition to or in place of the specific equitable reliefs demanded in a great variety of cases which would not have come within the scope of the general principle as it was regarded and acted upon by original equity jurisdiction, and in which, therefore, a court of equity would have refrained from exercising such a jurisdiction." Pom. Eq. Jur. p. 354.

See, also, *Morgan* v. *Child, Cole & Co.*, 41 Utah, 564, 128 Pac. 522; *Mills* v. *Gray*, 50 Utah, 224, 167 Pac. 358; *O'Neill* v. *Mutual Life Ins. Co. of N. Y.*, 51 Utah, 592, 172 Pac. 306.

There are fifty-nine plaintiffs in this action, each having a separate and individual claim or right of action for damages growing out of the same trespass on the part of the defendant company, and arising from one common cause, and governed by the same legal rules—the only separate issue that would or could be involved is the amount of compensation due each plaintiff. The rights of each and all can be determined in this action and full relief awarded. The prevention of a multiplicity of suits is not only within the province of a court of equity, but it is the court's duty to so direct the litigation between the parties whenever needless and expensive litigation and interference with the other business of the court will result from a failure so to do. For a discussion of this question, see 1 Pom. Eq. Jur. (3d Ed.) sections 243 to 257, inclusive; also *Browder* v. *Phinney*, supra.

From the foregoing conclusions the order will be as follows: That the findings of fact made by the district court be, and the same are hereby, affirmed; that the conclusions of law and decree granting a permanent order restraining the

operation of defendant's plant be, and the same are hereby, reversed. The cause is therefore remanded, with directions to the district court to allow amendments to the pleadings if desired, and proceed to hear testimony and determine the past and future damages to each plaintiff by reason of the continued and perpetual operation of the company's plant at its present capacity, and to make separate findings upon such issue of fact, and enter judgment or judgments accordingly; or the court may call to its assistance a jury to determine the amount, if any, of such damages, as in other equitable proceedings.

I see no objection to the suggestion made by the Chief Justice in his concurring opinion that all other parties similarly situated be allowed to intervene in this action, and have such damages, if any, as they have sustained by the same cause determined. It will also, therefore, be so ordered.

Neither party will recover costs on this appeal, but the order taxing costs in favor of plaintiffs made by the district court will be, and is hereby, affirmed.

McCARTY, CORFMAN, and THURMAN, JJ., concur.

FRICK, C. J. (concurring).

I concur in the opinion of Mr. Justice GIDEON, reversing the decree granting an injunction, and also concur in his conclusion that under our statute the plaintiffs are entitled to recover damages to the extent that they and their property may have been, or may continue to be, affected or damaged by the operation of the gas plant of the defendant. I feel constrained, however, to state, as briefly as possible, the reasons that impel me to arrive at the foregoing conclusions.

While I concur in the finding of the district court that the operation of the gas plant, and the fumes and gases arising therefrom, to some extent at least, "so interfere with the comfortable enjoyment of life and of the property of the plaintiffs and of each of them as to render said property less fit for habitation for residence purposes," and that for these

reasons the plaintiffs are damaged, yet, after a careful consideration of the evidence, I cannot yield assent to the additional finding that plaintiffs and their families are affected in their health to a greater extent than are the inhabitants of Salt Lake City generally from the smoke and fumes which pollute the atmosphere in the city from the manufacturing and other plants and from private and public buildings generally. A careful review of the medical and expert evidence convinces me that while at times the odors, fumes, and gases that emanate from the gas plant are offensive, annoying, and produce discomfort at least to some extent, yet the overwhelming weight of the evidence is to the effect that, in so far as health is concerned, the health of the plaintiffs and their families is not affected differently or to any greater degree than is the health of the inhabitants of Salt Lake City generally from the cause I have just stated. Moreover, the evidence shows that there are local conditions which, during certain seasons of the year, produce offensive odors and stenches which are disagreeable, annoying, and for which the defendant gas plant is not responsible.

From the evidence it appears that the officers of both the city and the state boards of health have had the matter of the city's health under investigation, and none of the officers of those boards, including the county physician, have been able to discover that the operation of the gas plant had any appreciable effect on the health of the plaintiffs or of their families. That conclusion is supported by the testimony of the physicians who were professionally called to attend some of the plaintiffs in cases of sickness. It is further supported by the testimony of other experts. True, the testimony of several experts called by the plaintiffs is to the contrary. If, however, the testimony of the latter experts is carefully analyzed, it will be found that they, to a large extent at least, base their conclusions on hypothetical questions propounded to them in which questions certain facts were assumed which in my judgment, the great weight of the evidence shows were not established, at least not to the extent that they were assumed to exist in said questions. There are circumstances disclosed by the record which are not contradicted, and

which, I conceive, cannot be, which very strongly support and which have forced the foregoing conclusions upon me. For example: The evidence is conclusive that a large number of persons whose homes either adjoin those of some of the plaintiffs or which are in close proximity thereto have not been affected at all by the operation of the gas plant either in health or comfort. Let it be assumed, however, that there are certain persons whose senses are not acute, and hence they are not easily disturbed, or who may favor 'the defendant, and thus were willing to testify that they suffered no discomfort or annoyance, yet we all know that, if the fumes and gases were as poisonous and as deleterious to health as plaintiffs claim they are, no one could escape their effect indefinitely. While it is true that certain poisons may not always affect all persons to the same extent, yet is it equally true that animal life cannot entirely escape the effects of poison, poisonous gases, and especially not if their presence is long continued. Many witnesses testified that, although they lived in houses adjoining those of plaintiffs, yet they were not affected to any extent. Moreover, the physicians and experts who testified on behalf of the defendant to my mind have clearly explained in what way much of the discomfort and annoyance of plaintiffs arose. Those experts point to the facts that every stove, furnace, and fireplace in the city in which soft coal is used as a fuel, in a lesser degree, produces the same fumes and gases as are produced by the gas plant; and that the smoke arising from the numerous chimneys in Salt Lake City is at times very annoying and produces discomfort, especially under certain atmospheric conditions. If, therefore, the fumes and gases emanating from the gas plant to any extent increase those which usually emanate from all kinds of chimneys, it can be readily understood why plaintiffs are complaining.

To my mind it is quite clear, however, that while the operation of the defendant's gas plant does not appreciably affect the health of the plaintiffs or their families, yet it does, at least at times, substantially affect their comfort, and thus also affects the value of their property for residential purposes. The gas plant, within the purview of our statute (Comp. Laws

1907, section 3506), to some extent at least, "interferes with the comfortable enjoyment of life or property," and therefore constitutes a nuisance. The plaintiffs are therefore entitled to relief. The only question is, what shall be the nature and extent of such relief?

The defendant pleaded laches as a defense, which, to my mind, was clearly established, in that the plaintiffs stood by for years and permitted the defendant to expend very large sums of money in enlarging and in improving the gas plant, so as to enable the defendant to meet the requirements of the inhabitants of Salt Lake City for gas for both fuel and lighting purposes. In this connection it must not be overlooked that the great weight of evidence is to the effect that in enlarging and in improving the plant the defendant did not increase, but very materially reduced, the smoke, fumes, and gases emanating from the plant. In view, therefore, that the health of plaintiffs and their families is not materially affected by the operation of the gas plant, and for the further reason that plaintiffs have stood by and permitted the defendant to expend very large sums of money for the purposes stated, and for other reasons that I shall not now pause to enlarge upon, I am clearly of the opinion that plaintiffs are not as a matter of right entitled to injunctive relief. The fact that plaintiffs have stood by and have permitted the defendant to enlarge and improve its plant, and that it by that means has materially reduced the effects of the nuisance, does, however, not prevent plaintiffs from recovering such damages as they may have or shall continue to suffer by reason of the operation of the gas plant. The only effect of plaintiffs' laches is to prevent them from unconditionally restraining the defendant from operating its gas plant. Plaintiffs may proceed upon the principle laid down by the Supreme Court of the United States in *New York City* v. *Pine*, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820. The principle there announced is fully discussed and applied by the New York Court of Appeals in what are commonly called the New York Elevated Railroad Cases. See 1 Pomeroy, Eq. Jur. (3d Ed.) sections 470, 472, and 473. See, also, *Lynch* v. *Metropolitan El. R. R. Co.*, 129 N. Y. 274, 29 N. E. 315, 15 L. R. A. 287, 26 Am.

St. Rep. 523; *Shepard* v. *Manhattan R. R. Co.*, 131 N. Y. 215, 30 N. E. 187; and many other cases cited by Pomeroy in the footnote to section 470, supra. In the foregoing cases it is held that where business enterprises constitute a continuing nuisance, like defendant's gas plant, and an injunction is refused as a matter of right, the damages may, nevertheless, be assessed in the equity action; that is, the court may deny the injunction as a matter of right, but may assess the damages caused by the nuisance in that action. While that principle is frequently applied where a party has wrongfully taken possession of property and is using it, as illustrated by Mr. Pomeroy in section 473, supra, yet the principle is not exclusively limited to that class of cases as clearly appears from the case of *New York City* v. *Pine,* supra, and the New York Elevated Railroad Cases, to which I have referred. In referring to that class of cases Mr. Pomeroy says:

"If a person appeals to a court of equity for an injunction to restrain the maintenance or to compel the removal of the structure, the court to which such appeal is made has the power to determine the amount of unpaid damages, and to withhold an injunction, and to direct that the structure be permitted to remain and be operated, provided the assessed damages are paid. Courts of equity, it seems, the more readily pursue such a course when important public interests are at stake, and a contrary course would be productive of much public inconvenience and annoyance. This rule applies with special force when the complainant, by making no objection, acquiesces in the work. It finds frequent application in the New York Elevated Railroad Cases."

By referring to those cases it will be seen that the elevated railroad was held to be a continuing nuisance, which caused discomfort and annoyance to the complainants, who were abutting property owners. While in those cases the relief was not granted upon the theory that the complainants had stood by, it was, however, granted upon the theory that it was a continuing nuisance, but not one which affected the health of the complainants. In those cases, like in the case at bar, actions were commenced in equity to enjoin the operation of the railroad and to abate the alleged nuisance. The New York Court of Appeals, however, held that although the elevated railroad was a continuing nuisance, yet its operation

should not be enjoined; and further held that the court in which the action was commenced had full power to assess the damages and to enjoin the operation of the railroad if such damages were not paid. While it may be true that the courts do not all agree with the procedure followed by the New York Court of Appeals, yet it is also true that but slight reflection will convince any one that in cases where the property rights or the comfort of a large number of persons are affected by the same nuisance, which in its nature is a continuing one, the procedure adopted in New York is the most practical, the most economical, and by far the most speedy. The action in the case at bar was commenced in equity by a large number of persons who are affected by the operation of the defendant's gas plant. True, the plaintiffs did not in terms pray for damages as in law cases, but they did pray for every kind of relief to which the court might find them entitled, which necessarily included damages. The case comes squarely within the provisions of Comp. Laws 1907, section 3187. If, however, the allegations of the complaint in some respects should be found insufficient, the complaint may be amended.

The court having full jurisdiction of the case, I can conceive of no possible reason why, in furtherance of justice and in order to avoid a multiplicity of actions, as well as to avoid unnecessary expense both to the public and to the parties, it may not assess the damages, and in doing so make separate findings respecting the amount each plaintiff is entitled to, and enter separate judgments upon the findings for the amounts found. Neither do I see any objection to permitting all other parties who may be similarly situated and affected, and who claim to be damaged, to join with plaintiffs in this action for the purpose of having their damages adjudicated. Nor does such procedure affect the right of appeal of any one or of all of the parties to the action. In actions where the rights of the parties are separate, but where they join in one action to avoid a multiplicity of suits, or for some other good reason, each one may prosecute an appeal independently. The doctrine has recently been stated by this court in *Gunnison Irr. Co.* v. *Gunnison Highland Canal Co.,* 52 Utah, 347,

174 Pac. 852. Any one or more of the plaintiffs may thus appeal to this court if they so desire, while the defendant may likewise appeal as against any one or more, or all, of the plaintiffs.

A majority of the court doubt both the propriety and the necessity of enforcing the alternative relief suggested in the quotations from Pomeroy; therefore both Justice GIDEON and myself defer to their judgment, and have yielded assent to the judgment as stated.