Miles F. McDonald, J.
The singular circumstances of this case require the court to determine whether or not the advice of Oliver Goldsmith (Art of Poetry on a New Plan, vol. 2, p. 147): 11 He who fights and runs away will live to fight another day ”, should be adopted as a precept of equity jurisprudence, or *789 whether the court should declare that once having submitted his cause to a court of equity, the plaintiff may be prevented from beating a strategic retreat so that he may then attack when conditions are more propitious.
The observation of Mr. Justice Irving Lehman, later Chief Judge of the Court of Appeals, quoted by Mr. Justice Page, writing for the Appellate Division, First Department, in Trustees of Presbytery v. Westminster Presbyterian Church (192 App. Div. 163-164) is singularly appropriate:
“ 1 Concededly there is no precedent for the present action, but the facts upon which the action is based are also apparently without parallel, and it may well be that a court of equity can and should find some method of remedying the situation by using its well-established powers, even though such powers have never been called into play in a similar situation. ’
“ A court of equity having taken jurisdiction of the subject matter of the action will mould its relief so that the interest of all parties will be finally determined in the action.”
It is the opinion of this court that the latter course is to be followed if the failure so to do renders the term ‘ ‘ equity ’ ’ not the antonym but the synonym of injustice.
On September 17, 1958 plaintiff commenced this action by service of a verified complaint in which it is alleged that by virtue of an oral agreement made on or about the first day of March, 1956 the plaintiff was the owner of an undivided one-quarter interest in a joint venture for the assembly and sale of tax lots in section 24 on the Tax Map of the Borough of Brooklyn. The property the subject of the agreement included some 120 tax lots in section 24 (Canarsie) and included more than 500 individual lots having a value in excess of $1,000,000. At or about the same time a notice of pendency of action was filed covering all of said property. During the next 12 months the parties were before the court on numerous procedural matters. Amended complaints were served, amended lis pendens and additional lis pendens were filed, and numerous appeals were taken to the Appellate Division. In the course of the foregoing, an order of final and complete preclusion was entered which prohibited the plaintiff from giving any proof whatsoever concerning the making or existence of the oral contract which served as the basis for the plaintiff’s complaint. In October of 1959, more than one year having elapsed since the commencement of the action, and the plaintiff having failed to notice the case for trial, the defendants noticed the case for trial for the November Equity Term. Immediately thereafter plaintiff moved *790 before Special Term, Part VIII of this court to strike the case from the calendar, which motion was denied by Mr, Justice Brown on November 2, 1959. An appeal was taken from Judge Brown’s order, in the course of which plaintiff moved for a stay of the trial pending the appeal, which motion was denied by the Appellate Division on the same day it was heard. The appeal, however, from the order of Mr. Justice Brown has not as yet been perfected. Thereafter the case came on to be heard at Special Term, Part III, the Equity Part of this court, on November 16. At that time the attorney for the plaintiff made a further application for an adjournment, which was denied, the attorney for plaintiff stating,'1 Then in that situation, of course, the plaintiff not being ready to go forth must suffer a default.” At this time the court indicated it would dismiss the plaintiff's complaint and grant the defendants judgment by default. The defendants vigorously opposed the court's proposed action, the attorney for the defendant Berfond stating; “ to permit this plaintiff in an equity court, unless the law absolutely compels it, to pick up Ms marbles and walk away and then start another action on the payment of — is it fifty or seventy-five dollars court costs — is just outrageous to our sense of fair play. The plaintiff here is the one who is in difficulties. It is his preclusion and the preclusion was coupled with an application by the plaintiff to he relieved of a default, * * * Now, as I say, if he is to be permitted to walk away from this situation and harass ns for the next ten years, render our title unmarketable, either by threats of litigation or by actual litigation, if he is to be permitted to say in this action;61 am precluded, I will start another action where the preclusion order has fallen, I am g’oing to start this action, stop it when I am precluded, start another action where I won't be precluded and I will have my cake and eat it, too ' ’ ’, The defendants then advised the court that they were desirous of presenting proof which in their opinion would justify the court in making a determination on the merits even though the plaintiff abandoned the trial of the action. The court expressed doubt of its authority to grant the defendants such relief, stating that it would deny the plaintiff’s application for an adjournment, find him in default, and dismiss the complaint.
The court then stated it would permit the defendants to submit the proof which they desired to offer and reserved its final decision with respect to the court’s power to make a determination upon the merits, and granted to the plaintiff an opportunity to submit authorities with respect to Ms position without waiving any rights to a dismissal of the action by virtue of Ms applica *791 tion for a voluntary nonsuit, stating that if the court determined ‘ ‘ that the dismissal of the complaint is not the appropriate action and that other action should be taken I will amend the decision with respect to it. ’ ’
At this point counsel for plaintiff withdrew and did not participate further in the action. It should he noted that counsel for the plaintiff who was0retained solely for the purpose of trial should not he charged with the responsibility for the dilatory tactics prior thereto. No course of action than the one adopted was open to him at the time of the trial. Thereafter the defendants offered testimony covering some 290 pages of stenographic minutes and numerous exhibits, together with the examination before trial of the plaintiff which covered some 1,100 pages. The plaintiff has now submitted a proposed judgment dismissing the complaint and granting defendants a single bill of costs. Defendants, on the other hand, have submitted proposed findings of fact and conclusions of law as well as a judgment determining upon the merits the issues framed by the pleadings, directing a cancellation of various notices of pendency of action heretofore filed and directing that costs and expenses occasioned by the filing of notice of pendency of action be assessed against the plaintiff pursuant to section 123 of the Civil Practice Act. Both sides have submitted extensive and well-prepared memoranda in support of their particular positions.
The primary question submitted for the court’s determination is whether or not this court has, under the unusual circumstances of this case, the power to grant a judgment in favor of defendants on the merits, even though the plaintiff refused to proceed to trial, or is constrained merely to hold the plaintiff in default and dismiss the complaint, which would be in the nature of a voluntary nonsuit. The court is now of the opinion that the defendants are entitled to a determination upon the merits, and that its previously expressed intention to dismiss the complaint and grant a default judgment is inappropriate, for to hold otherwise would permit a plaintiff to continue to harass a defendant for the entire period of the Statute of Limitations by repeatedly instituting actions and repeatedly moving for nonsuits when ultimately faced with a trial of the issues raised by the pleadings, for if the court is powerless to act in the first instance it will be equally powerless in succeeding actions. An action in equity would thereby become the sword of an agressor rather than the shield of the oppressed.
Necessary to the conclusion reached here is the determination that there is no distinction between a voluntary discontinuance *792 and a voluntary nonsuit. Both are stratagems employed to avoid coming to grips with the enemy, and it is the opinion of this court that it is impossible to distinguish between them and that the limitations imposed upon plaintiff under rule 301 of the Rules of Civil Practice apply with equal force to both.
Rule 301 of the Rules of Civil Practice as it now exists, was adopted by the Justices of the Appellate Division, effective September 1, 1953, in replacement of the prior rule which was simultaneously repealed. Had plaintiff applied for an order of discontinuance, the court by the authority conferred by this rule could have conditioned such discontinuance upon a stipulation that the plaintiff would commence no new action upon the same cause, and that the notices of pendency filed by the plaintiff should be cancelled without leave to refile. In Rossini v. Hickey (N. Y. L. J., Dec. 23,1958, p. 9, col. 1) the court stated: “ Plaintiff moves to discontinue his action, intending to commence another action against the defendant, as set forth in the moving papers. The defendant opposes this motion on the ground that the plaintiff has been permanently precluded in this action for failure to serve his bill of particulars, and to grant this motion would prejudice the defendant. Granting plaintiff’s motion after he has been precluded would permit the plaintiff to do by indirection that which he could not do directly. (Forbes v. Theodore L. Rubsaman & Co., N. Y. L. J., July 28,1955, p. 5, col. 3, affirmed 2 App. Div. 2d 997.) Accordingly, plaintiff’s motion is denied.” (See, also, Maydole Tool Corp. v. Utica Drop Forge & Tool Corp., 2 A D 2d 846; Katz v. Austin, 271 App. Div. 217.) The absence of a counterclaim in the defendants’ answer or a prayer for affirmative relief does not negate prejudice from a discontinuance.
In Landsman v. Landsman (278 App. Div. 214, 215) the court stated: “ Although the usual situation'where discontinuance is denied is where a defendant has interposed a counterclaim, that is not essential. It is enough if a defendant has established rights in the action which would be prejudiced thereby.”
Even before the adoption of rule 301 of the Rules of Civil Practice in its present form, the courts had declared their inherent power to deny leave to discontinue when the effect of such discontinuance would be to prejudice the rights of the defendants (Stanford v. Cayuga Linen & Cotton Mills, 171 Misc. 1001, affd. 261 App. Div. 877; Grana v. Metropolitan Life Ins. Co., 237 App. Div. 54).
If the plaintiff at this late stage of the litigation succeeds in inducing the court to dismiss his complaint he will thereby have achieved by indirection a voluntary discontinuance in the face *793 of the defendants ’ opposition and to their prejudice. The defendants would he confronted with the prospect of a renewal of the litigation and a continuing cloud on their title. For the record of this litigation would place prospective buyers on notice that the plaintiff’s claim had never been finally adjudicated.
Accordingly, the question is whether or not the court has the power to do that which it ought to do to end the litigation here and now, with res judicata forever barring plaintiff’s cause of action.
A study of the circumstances which prompted the 1953 repeal of the old rule 301 of the Buies of Civil Practice and the enactment of the new rule 301 compels one to conclude that it was not intended to confer a barren benefit upon a defendant who had been subjected to the harassment inflicted by a plaintiff. The converse is true, for it is quite evident that the rule was intended to prevent a plaintiff from doing precisely what the plaintiff has attempted to do in this instance.
Buie 301 was not the product of a careless and haphazard conception. It resulted from an exhaustive study made by the Judicial Council of the State of New York, of which the Chairman and Vice-Chairman were, respectively, the Chief Judge of the Court of Appeals and the Presiding Justice of the Appellate Division of the First Department.
The plaintiff in support of his contention that the court is powerless to do other than grant the defendants a judgment by default, relies primarily upon the decision in Mink v. Keim (291 N. Y. 300). The Keim case is distinguishable from the instant case in two regards — first, it was not an action in equity, and secondly, there was no finding by the court in that case that the action was brought in bad faith. • In the instant case it is quite apparent (1) that the default was willful and was a calculated strategy on the part of the plaintiff to avoid the effects of rule 301 of the Buies of Civil Practice, and (2) that the proof submitted by the defendants which in greatest measure was from the lips of the plaintiff himself in the course of an examination before trial, clearly demonstrates that the action was entirely without merit and was brought in bad faith for the sole purpose of harassing the defendants undoubtedly with a view to compelling a settlement to relieve the defendants ’ property from the onerous burden imposed by a notice of pendency of action. Under these circumstances, to deny the court power to make a final determination in the action would render it impotent.
Further observation of rule 301 of the Buies of Civil Practice in the light of the decision in Mink v. Keim (supra) indicates clearly that this decision is not apposite here. Mink v. Keim *794 {supra) was decided in 1943 prior to the adoption of the present rule 301 of the Rules of Civil Practice. The dissenting opinion of Judge Desmond, in which Judge Loughban concurred, distinguishes between voluntary nonsuits, inadvertent failures to answer the calendar and intentional abandonment, such as was occasioned in this case. Judge Lottghban, as Chairman of the Judicial Council, which recommended the adoption of the amended rule 301, was undoubtedly aware of the problem to be dealt with, for it was he who joined in Judge Desmond’s strong dissent from the majority holding in Mink v. Keim (supra, p. 307) which contained the following observation: “ When their causes of action were consolidated with others by an order which still stands, plaintiffs could not deprive that consolidation order of all effect by standing silent at the trial or by remaining* away from it and permitting a dismissal on the merits, and then commence, without anyone’s leave, a new action for the same relief.”
It is quite evident that rule 301 of the Rules of Civil Practice was adopted to prevent a willful default of the type committed here. In the course of the proceedings before the court on November 16, counsel for plaintiff studiously avoided any application for a voluntary discontinuance, for pursuant to the authority conferred by rule 301 of the Rules of Civil Practice the court would then have been in a position to impose conditions. (See Rossini v. Hickey, supra; Maydole Tool Corp. v. Utica Drop Forge & Tool Corp., supra; Katz v. Austin, supra.) Instead the plaintiff merely refused to participate and withdrew. Certainly the plaintiff cannot do by indirection what is forbidden directly. To hold otherwise would render rule 301 completely ineffective and would permit the plaintiff to avoid the consequences of the order of preclusion with which he is faced and would render a nullity all of the previous actions taken by the court to date. No such legal lacuna can be presumed to have been the intent of the rule-making body.
Rule 301 of the Rules of Civil Practice was enacted by the Legislature following* the submission of the Nineteenth Annual Report of the New York Judicial Council (1953) entitled “Recommendations relating* to Voluntary Discontinuance.” The revised rule 301, superseding the earlier provision, constituted a verbatim enactment of the provision as proposed by the Judicial Council (pp. 80-81, 197-217).
It is quite evident and reasonable to believe that the Judicial Council, comprised of the most distinguished jurists in the State, mindful of the problem to which a solution was being applied, *795 would not leave open an easy method of evasion of the rule through suffering a deliberate default upon the trial, as in this ease. This court is convinced that the procedure denominated in the rule as a voluntary discontinuance is not restricted to a conventional application for leave to discontinue. A discontinuance under the rule must be deemed to embrace any attempt on the part of the plaintiff to effect through indirection, or to invite, a termination of the action which would leave the plaintiff free to renew the litigation by commencing another action. Such attempted evasions are within the scope of rule 301 as ‘ ‘ voluntary discontinuance.” These include deliberate defaults by the plaintiff upon trial with the object in view of bringing about a nonsuit or dismissal of the action, also a motion by the plaintiff to dismiss his own action. Subdivision 2 of rule 301 provides that an action or proceeding shall not be discontinued by a plaintiff except upon order of the court and upon such terms and conditions as the court deems proper. A careful reading of the report of the Judicial Council by which the Appellate Division was impelled to promulgate a new rule 301 and the legislative repeal of section 457 of the Civil Practice Act, establishes to the court’s satisfaction that the Judicial Council, the Appellate Division and the Legislature considered a voluntary nonsuit to be nothing more than a form of voluntary discontinuance, and hence subject to the provisions of rule 301 wherein only “ discontinuances ” are mentioned.
It is to be noted that section 457 of the Civil Practice Act, both in its heading and in its text, speaks only of a “ nonsuit.” The word “ discontinuance ” is nowhere mentioned in the provision. On the other hand the Council’s report, in discussing section 457 of the Civil Practice Act in support of its recommendation for repeal of the provision, refers to the provision as forbidding a ‘ ‘ voluntary discontinuance ’ ’ at and after the point in the trial has been reached ‘ ‘ where the case has been committed to a jury to consider its verdict. ” It is indisputable that what the Civil Practice Act, in section 457, classifies as a “ nonsuit ” the Judicial Council characterizes as a “ voluntary discontinuance.” The Legislature was, by such repeal of section 457 of the Civil Practice Act, undertaking to restrict the right of a plaintiff to voluntarily terminate an unpromising lawsuit. Clearly the Legislature did not have in mind by the repeal to permit a voluntary nonsuit at any stage of an action where previously such nonsuit could be accepted only up to the point where the case was committed to the jury. The only logical conclusion that can be arrived at is that by repeal of section 457 of the Civil Practice *796 Act and the adoption of rule 301 of the Buies of Civil Practice (both effective Sept. 1,1953) the Legislature intended to deprive a plaintiff of his prior right to suffer a voluntary nonsuit at any stage of the trial, and to relegate a plaintiff seeking to terminate an action to the procedures outlined in rule 301 of the Buies of Civil Practice for discontinuance generally.
Illustrative of the recognition of the relationship between a voluntary discontinuance and a voluntary nonsuit is the opinion of Justice Lewis (later Chief Judge of the Court of Appeals), writing for the Appellate Division of the Fourth Department in Piedmont Hotel Co. v. Nettleton Co. (241 App. Div. 562, 563) as follows: “ Under the general rule a plaintiff may discontinue an action or submit to a voluntary nonsuit at any time before its issues have been committed to the court or a jury.” It is to be noted that in the foregoing the word “ discontinue ” is used as an alternative of a submission to a voluntary nonsuit, and that the opinion, without distinction between the two procedures, sets out the same principle of law as being applicable in equal measure to both.
It is a fair construction, accordingly, for one to hold that rule 301 uses the term “ discontinuance ” in its broadest sense to include every equivalent procedure whereby a plaintiff seeks to bring about a termination of the action by an intentional withdrawal or removal therefrom.
The plaintiff in this ease had announced his “ default ” upon the trial and he has given effect to such announcement by physically withdrawing from the contest, at least to the extent of offering no evidence. The defendants, for their part, did not move to dismiss plaintiff’s complaint, rather, they have argued that only through an adjudication in their favor can they lift the cloud with which plaintiff’s claim envelopes their title.
The general principle that equity will adapt the relief it grants to the exigencies of the situation sub judice has been the subject of endless and manifold iteration in countless cases. Uniqueness of the problem which confronts a court of equity does not bar relief, but serves rather as a challenge to the court’s ingenuity in finding means whereby justice may be done between the parties (see Trustees of Presbytery v. Westminster Presbyterian Church, supra; Lynch v. Metropolitan El. Ry. Co., 129 N. Y. 274; Zeiser v. Cohn, 207 N. Y. 407).
The plaintiff herein has voluntarily submitted himself to a court of equity, seeking a declaration of his rights with respect to the property the subject matter of this action. When such relief is sought, the court is not limited merely to a declaration *797 that the plaintiff does not have the rights asserted. The court may, in the appropriate case, retain jurisdiction of the action and exercise its power to declare the rights and legal relation of the parties, whatever they may be (Rockland Light & Power Co. v. City of New York, 289 N. Y. 45).
In his prayer for relief the plaintiff seeks numerous remedies. Necessary to the granting of any or all of them is the adjudication that the plaintiff is the owner of an undivided one-fourth interest in the premises the subject of this action, for unless such finding is made by the court the plaintiff is not entitled to any of the relief sought. The fact that the plaintiff in his prayer for relief seeks to implement the declaration which is implicitly sought does not make the action any less one for declaratory judgment, even though that declaration be that the defendant holds the property as a trustee. In his prayer for relief in the amended complaint, the plaintiff seeks the court to grant him two types of relief, namely (1) declaratory and (2) coercive. Uniting in a single complaint a prayer for relief, both declaratory and coercive, does not disqualify the relative items as appropriate for a declaratory judgment. The right to consequential and coercive relief whether or not associated with declaratory relief finds its source in section 473 of the Civil Practice Act which authorizes such actions. (National City Bank v. Waggoner, 230 App. Div. 88; Allen v. Carsted Realty Corp., 133 Misc. 359; Great River Realty Corp. v. Rector, 284 App. Div. 977.)
It is therefore quite evident that the court having taken jurisdiction of an action seeking declaratory relief, should not dismiss it if it appears plaintiff is not entitled to the declaration he seeks; but the court should make such declaration and adjudication as is appropriate and as will serve to close the controversy. In Rockland Light & Power Co. v. City of New York (supra, p. 51) the Court of Appeals laid down the rule as follows: “ All the judges recognized, too, the wisdom of the'practice that a complaint praying for judgment declaring the ‘ rights and legal relations ’ of the parties should not be dismissed as insufficient merely because the facts alleged in the complaint show that the plaintiff is not entitled to a declaration of rights as the plaintiff claims them to be. The court should, in proper case, retain jurisdiction of the action and should exercise its power to declare the rights and legal relations of the parties whatever they may be. ’ ’
Whether or not the court should exercise the power to grant affirmative relief to a defendant where the plaintiff has willfully defaulted must be decided upon the facts in each individual case, *798 the criteria to be applied being whether or not to deny such relief would render the court an abettor of unconscionable injustice. Under the conditions existing here, justice demands and equity compels its exercise.
The plaintiff has set in motion the machinery for a declaration of the rights and legal relations between the parties. The court is convinced that the controversy is a justiciable one and under the authorities it is immaterial which party initially sought the declaration. The plaintiff may not now ex parte and by willful default halt the judicial process. The defendants are entitled to a final determination which will free their property of the claim that plaintiff makes of an interest therein.
The proof submitted here indicates clearly that the plaintiff’s action is entirely without merit. Plaintiff admitted that aside from his small payment dealing with a specific group of lots made in October of 1956, months after the agreement the subject of this action had been allegedly entered- into, he made no financial or other contribution to the venture. Further, that the books maintained by him contained no entries with respect to his ownership of the property, although they did contain a record of his interest in the properties covered by the subsequent agreement of October 3 which, if the plaintiff is to be believed, was entirely unnecessary as the plaintiff had acquired his interest prior thereto. It is inconceivable that while the plaintiff and defendants entered into a written agreement with respect to a small number of lots in October, 1956, in which according to the plaintiff he already had a 25% interest by virtue of the alleged contract, there never was a single writing exchanged with regard to some 675 lots valued at over $700,000 in which the plaintiff claimed he had already a 25% interest, even though he knew at the time that these lots had already been acquired by one of the defendants and were held in his name and that he had no writing to confirm the larger and more valuable holding. It is unnecessary to point out in further detail the lack of merit of the plaintiff’s claim. The plaintiff’s testimony taken in examination before trial results in nothing but confusion for it consists entirely of contradictions and evasions. Plaintiff wanders through a legalistic mystic maze and, each time he finds himself in a cul-de-sac, attempts to retrace his steps to find another avenue of escape from the trap which he has laid for himself. The court is ineluctably led to conclude and finds as a fact that the asserted claim of the plaintiff is a fabrication and completely without merit.
*799 In this connection, the court believes it is required to point out that the exemption of such oral ventures in real property from the restrictions of the Statute of Frauds appears to require legislative correction. The defendants’ property has been the subject of restrictions imposed by a notice of pendency of action for more than 14 months based upon nothing but the naked assertion created by an informal oral agreement. During the pendency of the litigation, carrying charges have mounted and the defendants have been prevented from making a sale of the property, and considerable hardship has been imposed upon them. Such a situation can and should be prevented in the future by appropriate amendment to the Statute of Frauds without imposing any hardship on people of good faith.
Under the foregoing circumstances, the defendants are entitled to a judgment on the merits declaring that the plaintiff has no interest in the real property the subject of this action, including the property, the subject of the October 3, 1956 agreement, namely, the Seacrest Properties, it being apparent from the record that the plaintiff failed to perform the terms and conditions of the written agreement on his part to be performed and has thus breached the agreement. The defendants are also entitled pursuant to section 123 of the Civil Practice Act to payment of the costs and expenses occasioned by the filing of the notice of pendency of this action and the cancellation thereof. For this purpose the court will appoint Honorable Peter P. Smith as a Referee to hear and report to this court proof of the amount of such costs and expenses. Upon confirmation of said report, they are to be included in the judgment to be entered. Each defendant will also be allowed the statutory costs as taxed. Findings of fact and conclusions of law and judgment signed.